VEZOLLES v. HOME INDEMNITY CO., NEW YORK.

No. 173.

District Court, W. D. Kentucky, at Louisville.

May 5, 1941.

J. Edward Gragg, of St. Louis, Mo., for plaintiff.

Joseph N. Hassett, of St. Louis, Mo., for defendant.

456

L. S. Grauman and Simeon S. Jacobs, both of Louisville, Ky., for plaintiff.

Mortimer Viser and Davis, Boehl, Viser & Marcus, all of Louisville, Ky., for defendant.

MILLER, District Judge.

This action is before the Court on the defendant's motions for a new trial and for judgment notwithstanding the verdict.

On June 6, 1939, the defendant the Home Indemnity Company, of New York, issued to Alvin Morton, Jr., its policy of liability insurance covering a Ford sedan owned by Morton. The limit of liability was $5,000. The policy named Morton as the assured and also extended the insurance to others under the following provisions contained in the policy:

"The unqualified word 'assured' wherever used includes not only the named assured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial' each as defined herein, and provided further that the actual use is with the permission of the name assured."

On the morning of September 3rd, 1939, Arthur Ruemmele was operating the Ford owned by Morton and ran over the plaintiff Katie Vezolles while attempting to cross the street at 26th and Market Street in Louisville, Kentucky. The plaintiff sued Morton and Ruemmele in the Jefferson Circuit Court. The trial Judge directed a verdict in favor of Morton for the reason that Ruemmele was not at the time of the accident acting as the agent or employee of Morton. The jury returned a verdict against Ruemmele for $15,000, no part of which was paid. Following the sheriff's return of no property found upon the execution issued under the state judgment, the plaintiff filed this action against the Insurance Company claiming that Ruemmele was covered by the policy under the omnibus clause above referred to. The policy obligated the Insurance Company to pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of liability imposed upon him by law for damages arising out of the use of the automobile. The defendant contends that at the time of the accident the actual use of Morton's car was not with the permission of Morton as required by the policy. It also pleaded the state court judgment in favor of Morton as a bar to this proceeding.

The third paragraph of the answer pleading the state court judgment as a bar was stricken by the Court on plaintiff's motion. The issue involved in the state court trial was not the same issue as was involved in this action. The directed verdict in favor of Morton decided that Ruemmele was not the agent of Morton. It did not decide that Ruemmele was using the car without the permission of Morton. Liability on the part of Morton in that action was predicated upon the relationship of principal and agent. Liability on the part of the Insurance Company in the present case is predicated upon the fact of permissive use of Morton's car by Ruemmele. The relationships of principal and agent and permissive use are entirely different. Permissive use of the car by Ruemmele could exist without the relationship of principal and agent existing.

The facts leading up to the use of the car by Ruemmele at the time of the accident were as follows: Morton, who had married in August, 1939, invited Ruemmele and a young lady to his house for a small party on the night of September 2nd. Morton lived just south of the city limits and called for Ruemmele in the Ford to take him to his house in the early evening. At about 10:30 Morton told Ruemmele to use his car and go for the young lady, which Ruemmele did. The party broke up between 2:30 and 3 o'clock in the morning. Morton told Ruemmele to take the young lady home in Morton's car, then to return to Morton's house and Morton would take him to his home in the City. When Ruemmele returned to Morton's house about 4 a.m. Morton and his wife were

asleep and the house was locked. Ruemmele rang the bell and knocked and after being unable to arouse anyone decided to drive himself home. On the way home he went about four squares past Kentucky Street on which he lived, and stopped at a cafe where he had something to drink with a friend whom he found there. He and his friend then decided to take a ride before going home. They drove further north in the city approximately a mile to 26th and Market where the accident occurred. The scene of the accident was about three squares west and about 9 squares north of where Ruemmele lived. The car was headed in the direction away from Ruemmele's home at the time of the accident. At the conclusion of the plaintiff's evidence which showed the foregoing facts, the defendant offered no further evidence and the Court directed a verdict in favor of the plaintiff in the amount of $5,000.

The authorities throughout the country are divided in their support of two different rules applicable to cases of this kind. The plaintiff relies upon the doctrine of where the owner of the car gives permission to another to use the car such use is covered by the policy even though the person using the car may use it in a way or go places not contemplated by the owner. This rule is somewhat modified in some of the cases by holding that the use is a permitted one under the terms of the policy where the deviation from the contemplated use is a slight one, although this doctrine has been criticized upon the ground that it establishes a test of liability which is necessarily variable and uncertain. Dickinson, Administrator v. Maryland Casualty Company, 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, and Annotation beginning at page 1401; Caldwell v. Standard Accident Insurance Company, 6 Cir., 98 F.2d 364. The defendant relies upon the doctrine that permission of the owner to the use of his car by another includes only such use as was reasonably contemplated by the owner and that use of the car by the operator outside of the scope of the contemplated use prevents such use from being a permitted use within the terms of the policy. It also relies upon the doctrine above referred to that a deviation from the contemplated use which is more than a slight deviation makes the use of the car one

without the owner's permission. Frederiksen v. Employers' Liability Assurance Corporation, 9 Cir., 26 F.2d 76; Trotter v. Union Indemnity Co., 9 Cir., 35 F.2d 104; Caldwell v. Standard Accident Ins. Co., 6 Cir., supra. There are numerous other authorities supporting both doctrines, but inasmuch as the foregoing cases well present the conflicting views it is not necessary to include numerous other citations in support of the respective positions. The weight of authority probably supports the contention of the defendant. The Court of Appeals of Kentucky has not passed upon the question. The Circuit Court of Appeals for the 6th Circuit in Preferred Accident Insurance Co. v. Barker, 104 F.2d 424 supported plaintiff's contention, but that case was decided after the decision in Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and followed the ruling of the Tennessee Court as expressed in Stovall v. New York Indemnity Company, supra. The conflicting rules were also referred to by the Circuit Court of Appeals for the Sixth Circuit in Caldwell v. Standard Accident Insurance Company, supra, but a decision was not necessary because in the opinion of the Court the particular facts of that case showed both that the deviation in use was a very material one and one which had actually been forbidden by the owner. In the present case the Court finds deviation from the contemplated use to be a slight deviation and one not specifically forbidden by the owner. Accordingly, it is open for this Court to decide whether it will follow the rule announced by the Connecticut and Tennessee cases or the rule announced by other authorities and relied upon by the defendant.

The defendant contends that the issue presented by the cases above referred to is not the one before the Court in this case because of the wording in the policy here involved which differs from the wording of the policies in those cases. In those cases the policies provided in substance that the insurance covered an operator of the car other than the owner if the use or operation of the car was with the permission of the named assured. In the present case the policy requires that "the *actual* use" be with the permission of the named assured. (Italics our own). It is contended that the phrase "actual use" is much more limited in its scope than

the word "use" as contained in earlier policies; that it means that the particular use made of the vehicle both at the time of the accident and at the place of the accident must be actually authorized by the owner, and that the phrase now under consideration was made a part of the more recent policies in order to eliminate further application of the so called minority view. See Appleman on Automobile Liability Insurance, pages 110 through 116; Johnson v. Maryland Casualty Co., D.C.W.D. Wis.Oct.1940, 34 F.Supp. 870; Liberty Mutual Ins. Co. v. Stilson, D.C.Minn. March 1940, 34 F.Supp. 885. Appleman's discussion of the question in the work referred to supports that contention, but it does not appear that the decisions of the last few years have uniformly made such a distinction. In Johnson v. Maryland Casualty Co., supra, the decision is based more on the fact that the operator of the car had been actually forbidden to use it at the time when the accident occurred than upon any specific wording of the policy. In Liberty Mutual Insurance Co. v. Stilson the decision is based primarily upon the facts that the permission to use the car was obtained by deceit and that the deviation from the contemplated use was into an entirely different state and involved approximately 670 additional miles, clearly a very material deviation. On the other hand the Circuit Court of Appeals for the Fifth Circuit and the Oklahoma and Louisiana Courts have upheld the plaintiff's contention in cases involving the phrase "actual use". See American Casualty Co. v. Windham, 5 Cir., 107 F.2d 88; Lloyds America v. Tinkelpaugh, 184 Okl. 413, 88 P.2d 356; Haeuser v. Aetna Casualty & Surety Co., La.App., 187 So. 684. The distinction as claimed by the defendant and supported by Appleman is discussed, criticized and rejected in Haeuser v. Aetna Casualty & Surety Co., supra. "Actual use" means the use of the car at the time under consideration, as contrasted with the "declared use" which refers in the policy to a future ·contemplated use. The use of the car by one other than its owner is in fact its actual use. In my opinion the question presented is the same regardless of the different wording in the more recent policies.

■ Although there was no express permission given by Morton to Ruemmele to use the car after Ruemmele returned to Morton's home, yet the permission to do so was no doubt present by implication. It is well settled that permission to use a car may be implied in the absence of an express prohibition. American Casualty Co. v. Windham, supra. Morton had given express permission to Ruemmele to use the car in order to take the young lady home and it was understood that the car would then be available for the purpose of conveying Ruemmele to his own home. Morton clearly indicated by retiring for the night and locking up his home that he intended for Ruemmele to drive himself home. Accordingly, the case is essentially different from three other types of cases relied upon by the defendant, namely: (1) Situations in which the facts fail to show an implied permission to use the car for any purpose whatsoever. (2) Cases where the owner of the car had actually prohibited the use which was being made of the car at the time of the accident, and (3) where the use of the car was at a time so much later than the time when the permission was given, or at a place so far removed from the geographical limits of its contemplated use that the use of the car was in reality a conversion by the operator instead of a permitted use. Decisions denying liability under policies of liability insurance are no doubt sound in all three types of cases. In the present case ·the actual use of the car by Ruemmele was probably different from what Morton actually contemplated at the time when he told Ruemmele to use the car, but it can not be said that such use was not agreeable to Morton or would have been prohibited by him if it had been called to his attention at the time when the possession of the car was given to Ruemmele. A temporary stop at a cafe and a short ride before going directly home is not an unusual occurrence. If Ruemmele had been the owner of the car and was using it to drive himself home after the party his use of the car as it was used would not have been considered abnormal, or ·something not to be expected. The provision in the policy is not to be governed by the law of principal and agent. Liability on the part of the Insurance Company under that theory of the law was already provided by the policy as it was written before the omnibus clause was added. The purpose of the omnibus clause was to extend the coverage beyond the limitations which would otherwise exist under the law of principal and agent. Its addition to the usual terms of liability insurance

policies was for the purpose of increasing the advantages of the policy being purchased, to provide additional coverage, and to be used as a selling point in competition with other standard policies. To give it a construction which is closely parallel to the existing law of principal and agent would ignore the evident purpose of its being made a part of the policy. In my opinion the purpose of the omnibus clause was to extend the liability insurance coverage to a person other than the owner who had the possession and use of the car with the permission of the owner for a somewhat limited period of time, without arbitrary and definite restrictions as to just what could be or what could not be done with the car during that period of time. The time element during which the use is permitted by the owner is in my opinion the element to be stressed rather than the particular use to which the car is put, so long as the particular use does not vary materially from the contemplated or usual use of a car under similar conditions. The main purpose of the clause is to substitute the operator of the car for the owner of the car while the car is being operated with the permission of the owner. This purpose is not given effect to its normal and full extent if we adopt the limitations now urged upon us by the defendant.

Defendant's motions for a new trial and judgment notwithstanding the verdict are overruled.