**SENATOR CAB CO., Inc., v. ROTHBERG.**
No. 257.

Municipal Court of Appeals for the
District of Columbia.
April 16, 1945.

246

Earl H. Davis, of Washington, D. C., for appellant.

Norman Sill, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

This action resulted from a collision between automobiles of the respective parties. The admitted cause was the negligence of one Day, driver of appellee's car. In a trial by the court without a jury it was held that appellee was not responsible either as Day's employer or as owner under our automobile Financial Responsibility Act.[1]

Day was employed as an attendant at a parking lot where appellee kept his car during the day. For several weeks prior to the incident in question Day had been engaged by appellee on a "tipping" basis to bring the automobile each evening after 6:30 and park it on the west side of 9th Street in front of his place of business. In that area street parking was restricted before 6:30 P.M.

Appellee had given Day no instructions as to the route he should follow. Under traffic regulations the shortest route he could take was to proceed south on 9th Street, in a direction opposite to the objective, thence west on D Street to 10th Street, north on 10th Street to F Street, east on F Street to 9th Street and south on 9th Street. This was the route usually followed.

The collision occurred at 6:45 P. M. at the intersection of 10th and K Streets, N. W., four blocks north of the intersection of 10th and F. Streets, and this is the only fact which sheds any light upon the existence or extent of any irregularity in Day's conduct or departure from his authorized and customary route.

Although others identified him as driver of the car, Day denied having driven it on that evening. Consequently there was no explanation of his presence at a point beyond his usual route. Whether appellee was liable, either under the common law applicable to the relation of master and servant, or under the local Financial Responsibility Act, depends upon the inferences which may reasonably be deduced from the foregoing undisputed facts.

At the conclusion of the trial the court made specific findings. Those material to the issue were:

That 'the authority given by appellee to Day extended no further than to require the delivery of the car on the late afternoon or evening of each day, and Day was without authority from its owner to operate the car for personal or private use; that the car at the time of the collision was not being operated with the express or implied consent of Rothberg; that the evidence did not establish that at the time of the collision Day had removed the car from the parking lot for the purpose of directly or ultimately on that trip delivering the automobile to Rothberg at his place of business, and does establish that at the time of the accident Day was operating the car without express or implied consent of Rothberg.

Our local statute (Code 1940, § 40—403) provides:

"Whenever any motor vehicle, after the passage of this chapter, shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner." '

This, except the final clause making proof of ownership prima facie evidence of consent, was in the identical words of statutes theretofore enacted by the legislatures of New York and other states to meet an obvious public need.[2] Thus there was imported into its terms the construction adopted by courts of the states where like provisions had been in force for many

---

[1] Code 1940, § 40—403.

[2] See State laws; see Anderson "An Automobile Accident Suit" (1934), Sec.

558; Forrester v. Jerman, 67 App.D.C. 167, 90 F.2d 412.

years.[3]  Except in so far as the final clause created a prima facie case of the owner's consent to the use of his automobile at the time of an accident, the common law rules defining the liability of an employer for the acts of a servant or employee were unaffected.  The purpose of the legislation was declared to be the extension of this liability to those owners who entrust their cars to others or give consent, express or implied, to their use by others.[4]  And by analogy, in determining whether a car is operated with the consent, express or implied, of the owner, the courts have adopted the usual rules governing the relationship of master and servant, and have held that a substantial deviation from an authorized use terminates consent.[5]  In the cases cited in the note it was held that an owner who permitted his son to use a car to drive to a certain Long Island town was not liable where the son drove the car to New York City; that an owner who loaned his car to a person who requested its use to procure medicines at a drugstore was not liable where the party used the car to drive elsewhere.  When the fact of deviation is established and the operator's purpose is clearly unauthorized, if defendant's testimony is to be believed, it was held in Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552, and Hiscox v. Jackson, 75 U.S. App.D.C. 293, 127 F.2d 160, 161, that the issue is one of law for the court, but that "the statutory 'presumption continues until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission.'"  Until consent is negatived by the owner, the old rule whereby affirmative proof must come from the plaintiff does not apply and defendant must offer evidence sufficient to overcome the prima facie case made by the statute.  It was not enough for the court to find that the evidence did not establish the fact that Day removed the car from the lot to deliver it to appellee.  The prima facie case must be opposed by what the evidence shows and not by what it fails to show.

■  Where the statute does not include a clause creating a presumption of consent, "it must appear, not only that the operator had the owner's consent to use the vehicle at the time he took it, but also that such consent existed at the time and place the accident occurred."[6]  The presumption created by our statute, until impeached by evidence of a defendant, furnishes plaintiff a prima facie case on both issues.

■  Here appellee's evidence was that Day was authorized to drive the automobile and park it in the street in front of appellee's store.  This was to be done "after 6:30 P. M." because traffic regulations prohibited earlier parking.  But otherwise the time, and the route to be taken, were not specified.  Appellee did not attempt to show that Day took the car before 6:30, or that he took it for an unauthorized purpose.  The presumption is that he did take it at a proper time and for the authorized purpose and that he had proceeded on his usual route before driving north to K Street.  Had the collision occurred on that route the prima facie case would be indisputable.

Therefore the only real issue for decision by the trial judge was whether continuing north on 10th Street to K Street, without turning east at F Street or at one of the other intervening intersections, was such a deviation from the purpose for which appellee permitted his car to be driven by Day that when the car reached K Street, four blocks beyond his usual route, its operation had then proceeded beyond the scope of Day's employment or, in the language of the act, was being operated without appellee's consent, express or implied.  This was a question for the trial court to determine from the conceded facts and in the light of the prima facie case of consent made by the statute.[7]  The pertinent facts were that Day's usual course was the short and most direct route; that

3 Willis v. Eastern Trust & Banking Co., 169 U.S. 295, 18 S.Ct. 347, 42 L. Ed. 752.

4 Psota v. Long Island R. Co., 246 N. Y. 388, 159 N.E. 180, 62 A.L.R. 1163.

5 Chaika v. Vandenberg, 252 N.Y. 101, 169 N.E. 103; Heavilin v. Wendell, 214 Iowa 844, 241 N.W. 654, 83 A.L.R. 872 and annotation; Bloom v. American Beauty Nail Polish Co., Sup., 19 N.Y. S.2d 569.

6 Patterson-Stocking, Inc. v. Dunn Bros. Storage Warehouses, 201 Minn. 308, 276 N.W. 737.

7 Hickson v. W. W. Walker Co., 110 Conn. 604, 149 A. 400, 68 A.L.R. 1044 and annotation; Anderson, supra, Sec. 563.

the owner had given no instruction as to the route he was to follow;[8] that the car had proceeded a few blocks beyond the turning point on the usual route; that there was no explanation of Day's purpose in passing this point.

In deciding the issue one must give a reasonable effect to the statutory presumption that an automobile driven by another is with the owner's consent. Where the owner shows that the car is taken without his authority, rebuttal of the presumption is usually a simple matter. The same is true where an owner has turned over an automobile with definite instructions that it is to be used for a certain purpose and where it is used for a different purpose or in violation of the instructions. But the presumption is not rebutted ·here without evidence: (1) That on· the occasion involved the car was taken for an unauthorized purpose, or (2) that there was such a departure from the driver's duties or his instructions as would terminate the owner's consent to its use.[9] In this respect there is no difference between the termination of consent and a substantial divergence from an employer's business, as the latter is defined in many cases.

The court made a general finding that when the collision occurred the car was operated by Day without the consent of the owner, express or implied. This was a mixed question of fact and law and depended wholly upon inferences drawn from the facts related. It made but one specific finding of fact, and that in a negative form, and with the burden of evidence placed on appellee by the statute this was not the equivalent of a finding that when Day *left the parking lot* he took the car to use on his own personal affairs and had no intention of immediately or ultimately returning it to the defendant on that trip. We see no justification in the evidence for such a finding, which would be the result of speculation rather than of reasoned deduction or inference. It may be that Day intended to transact some business of his own before returning the car to its owner. It may be that having no instruction as to the route he should take, and it being a balmy Spring day, in the Easter season, the effect of Spring flowers and Easter bonnets immobilized to some extent the call of duty and induced a desire to ride a few extra blocks. It may be that a trial judge could properly find the deviation was substantial, or that it was merely casual. Had the trial court made a factual conclusion on this issue we would have no right to review its judgment. But when its finding of a crucial fact goes beyond the range of probability, or is predicated on what the evidence fails to show when the burden of evidence is on the other party, the legal conclusion based thereon must fail. The case should, therefore, be remanded for a new trial.

Reversed.

HOOD, Associate Judge (dissenting).

I dissent because in my opinion the majority decision is the result of an unauthorized invasion of the fact-finding power of the trial court.

Proof of appellee's ownership of the automobile constituted prima facie evidence that Day was operating the automobile at the time of the collision with the consent of appellee. This prima facie evidence, or statutory presumption as it was termed in Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552, imposed on appellee the affirmative duty of proving that the car was not at the time of the accident operated with his express or implied consent. Rosenberg v. Murray, supra. Had appellee offered no evidence, appellant would have been entitled to a recovery as a matter of law, since negligence of the operator of the car was not disputed. Hiscox v. Jackson, 75 U.S. App.D.C. 293, 127 F.2d 160. But appellee did offer evidence that Day's authority was restricted to driving the car from the parking lot to appellee's place of business; and the effect of this was that Day had no authority to drive the car at Tenth and K Streets, for it is not claimed that either necessity or judgment required driving north on Tenth Street at its intersection with K Street in making delivery of the car. Whether this evidence was sufficient to overcome the statutory presumption was a matter of fact for the trial judge who sat as both judge and jury. Hiscox v. Jackson, supra. And the trial judge found, as a "factual finding," that "at the time of said accident said James T. Day was operating said Chevrolet automo-

---

8 See Bloom v. American Beauty Nail Polish Co., cited in note 5.

9 Anderson, supra, Sec. 565 (p. 678); Dennes v. Jefferson Meat Market, 228 Ky. 164, 14 S.W.2d 408.

bile *without either the express or implied consent or authority of said defendant Rothberg.*" That finding of fact, I think, is binding on this court, and eliminates from further consideration the statutory presumption.

The majority opinion, however, says we must go further and consider the fact that Day had authority to make delivery and that the collision occurred only four blocks north of the usual route, and from these facts, plus the time of the accident, "the presumption is that he did take it at a proper time and for the authorized purpose and that he had proceeded on his usual route before driving north to K Street." Herein, I think, is the erroneous basis of the majority opinion. What is the source of such presumption? A presumption is a rule of law compelling a specified conclusion in the absence of evidence to the contrary. What law compels the conclusion drawn by the majority? Not the statutory presumption, for it is limited to a presumption of consent of the owner at the time of the accident. It does not create a presumption of when the driver took possession of the car or the route followed by him prior to the accident. It must be remembered that the statutory presumption would have arisen if the accident had occurred at the extreme limits of the District —many miles away from either the parking lot or appellee's place of business—and had occurred at noon or midnight—many hours before or after time for making delivery. Surely in such a case no one would hold that the statutory presumption of consent at the time of the accident includes a presumption of the time the car was taken, why it was taken or the route which it had previously traveled. I think the majority confuses presumption with inference. From the developed facts in the case the trial court could have found, by inference, that Day took the car at a proper time for the purpose of making delivery, traveled his usual route to Tenth and F Streets and then deviated for a purpose of his own, intending ultimately to make delivery. "Inference is capable of bridging many gaps." Galloway v. United States, 319 U.S. 372, 386, 63 S.Ct. 1077, 1085, 87 L.Ed. 1458. But inferences are matters of fact, not of law, and must be drawn by the jury or other fact-finding body—in this case, the trial judge. And the trial judge did not draw such an inference. If two contrary inferences are possible, it is not for this court to say which should be drawn.

"The fact that a contrary inference is possible from the evidence does not allow us to set aside the one drawn by the Board." Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 542, 543, 63 S.Ct. 1214, 1220, 87 L.Ed. 1568. "Where two different conclusions may reasonably be drawn from uncontroverted evidence, the question as to which should be drawn is for the trial court and not for the appellate tribunal." United States v. Ingalls, 72 App.D.C. 383, 386, 114 F.2d 839, 842. The majority would reverse the trial court because it did not draw the inference which to the majority seems more reasonable.

There being no presumption as to when the car was taken, why it was taken or where it had been prior to the collision, I do not think this court can say, as a matter of law, that the trial court was unreasonable in finding that the evidence did not establish that Day removed the car from the lot for the purpose of directly or ultimately on that trip delivering the car to Rothberg. The only evidence to support, a contrary finding was the time and place of the collision. Opposed to that was the fact that the collision occurred on Saturday and often on Saturday nights delivery would be made as late as 8:00 or 9:00 o'-clock, the fact that while the accident occurred at Tenth and K Streets Day was evidently headed for a more distant place and his journey was cut short by the collision, and the fact that, in spite of all evidence to the contrary, Day for reasons known only to him denied that he was driving the car. The trial court was entitled to consider these facts and draw its own inference.

The discussion by the majority of the question of deviation is based on the assumption that the car was taken by Day for delivery to Rothberg, but since that assumption has neither evidence nor finding to support it, the question of deviation does not arise.

Finally, the majority, condemning any finding based on speculation, proceeds to speculate on whether Day intended to transact business of his own or was merely under the influence of Spring weather, Easter bonnets, etc. Neither this court nor the trial court is entitled to decide the case on speculation, but the trial court did have

the right, as this court does not, to draw inferences and conclusions from the admitted facts, and I think the majority has invaded the province of the trier of facts, a thing which we have repeatedly held we cannot do.