**BENNETT v. AMALGAMATED CAS.
INS. CO.
No. 11250.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 22, 1952.

Decided Oct. 30, 1952.

130

Arthur J. Hilland, Washington, D. C., for appellant.

Charles C. Collins, Washington, D. C., for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This appeal presents the question whether a public liability insurance policy, held by an owner of taxicabs leased to drivers for use in the District of Columbia, protected an individual lessee who incurred liability in North Carolina through negligent operation of his rented cab while he was on a personal pleasure trip in that state.

The Morgan Cab Corporation, owner of a fleet of rental cabs, acquired a new auto-mobile on June 25, 1946, and on the following day leased it to Leslie C. Wise by an oral agreement under which he was to operate the vehicle as a taxicab in the District of Columbia. Wise took possession of the taxicab and operated it as such thereafter. All went well until the following November. About the eighth day of that month, Wise set out in the rented cab on a pleasure trip to Norfolk, Virginia, and Asheville, North Carolina, accompanied by Mrs. Ruby E. Davis as his guest. On November 12, as they were riding on a highway in North Carolina, Wise lost control of the car, causing it to leave the road, crash through a guardrail, and roll down an embankment. Mrs. Davis was thrown out and suffered injuries from which she died a few days later.

Esther Evans Bennett, administratrix of the estate of Mrs. Davis, sued Wise in the United States District Court for the District of Columbia for damages for the wrongful death of her decedent, and obtained a judgment against him in the sum of $15,000. She then caused the issuance of a writ of attachment against his goods, chattels and credits, named Amalgamated Casualty Insurance Company as garnishee, and addressed to it interrogatories as to its indebtedness to Wise. The garnishee said it owed Wise nothing and had no asset of his in its hands. In a traverse to Amalgamated's answers, the administratrix claimed Wise was insured under a master public liability policy issued by Amalgamated to Morgan Cab Corporation, asserted the garnishee was therefore indebted to him in the sum of $5,000, the maximum coverage, and demanded judgment against it for that amount. The District Court heard evidence and adjudged the administratrix should recover nothing from the garnishee. This appeal followed.

Since Amalgamated did not question the technical propriety of garnishment, we do not stop to consider whether the administratrix used appropriate procedure, but proceed to ascertain what were the terms and conditions of the contract of insurance between Amalgamated and Morgan, about which the parties are in sharp dispute.

Some years prior to June 25, 1946, Amalgamated issued a master policy of public liability insurance to Morgan, a copy of which was filed with the Superintendent of Insurance of the District of Columbia. Each cab owned by the insured was brought under the policy when Amalgamated issued with respect to it a Certificate of Insurance which described the vehicle and certified it was insured thereunder. Attached to each certificate was the following endorsement:

"It is understood and agreed that, anything in this policy to the contrary notwithstanding, the coverage afforded under this policy in the District of Columbia shall extend beyond the District of Columbia while the vehicle is being operated for hire in the business of the assured, but not otherwise."

This form was filed with the Superintendent of Insurance on February 4, 1943, and has been used by Amalgamated continuously since. It does not appear from the record whether copies of the master policy and the form of the Certificate of Insurance and the accompanying endorsement just described were on file with the Public Utilities Commission of the District. But, as each Certificate of Insurance covering the taxicab described therein was issued to Morgan by Amalgamated, the latter filed with the Public Utilities Commission, on a card prescribed and furnished by it, a certificate that the vehicle was insured under Morgan's master policy. Pursuant to this filing, and as long thereafter as the certificate was not revoked by the insurer, the Commission issued weekly stickers to be affixed to the windshield of the insured vehicle, so passengers and others might know the required insurance coverage was in effect.

On June 25, 1946, when Morgan bought the cab which it leased to Wise on the following day, Amalgamated issued and delivered to the cab company such a Certificate of Insurance, with the endorsement above set forth attached thereto, showing the new cab would be insured under the master policy, beginning at 12:01 a. m. on June 26, 1946. The insurance company also filed with the Commission the required card evidencing the coverage of the new cab under the master policy. It is thus seen that throughout the period from June 26, 1946, until the twelfth day of the following November, when the accident occurred, the contract of insurance held by Morgan Cab Corporation with respect to the cab leased to Wise was the Certificate of Insurance showing the cab's coverage under the master policy, which certificate bore the endorsement that the coverage extended beyond the District of Columbia "while the vehicle is being operated for hire in the business of the assured, but not otherwise."

If that were all, it would be clear that Wise was not insured when the accident occurred, because he was not then and there operating the cab for hire, either in the business of Morgan or in his own business as a taxi driver. The appellant administratrix urges, however, that the 1943 endorsement, which we have quoted and under which Amalgamated is plainly not liable, was superseded on April 29, 1946. She so contends because on that day Amalgamated wrote the following letter to the Superintendent of Insurance:

"We are enclosing herewith two copies of the endorsement we propose to file on all policies issued on taxicabs by us in the District of Columbia. Premiums to [be] charged commencing May 25, 1946, will be Eleven dollars ($11.00) for four weeks coverage instead of Ten dollars ($10.00), the present rate for the same period."[1]

The proposed endorsement read as follows:

"It is understood and agreed that anything in this policy to the contrary notwithstanding the coverage afforded under this policy applies while the vehicle is used either for pleasure or in the business of the insured and that such coverage is afforded without regard to the boundaries of the District of Columbia."

1. This increase in rates was not based on the proposed liberalized endorsement, as the Superintendent of Insurance permitted it to become effective after the revocation of the proposal to use the new endorsement.

Although this endorsement was not a part of the Certificate of Insurance concerning the Wise cab which Amalgamated delivered to Morgan, and Morgan knew nothing of it, the administratrix insists ·it became a part of Morgan's insurance coverage ·by operation of law when its use was proposed to the Superintendent of Insurance and approved by him.

■ But, the undisputed testimony of the Deputy Superintendent of Insurance and the president of Amalgamated was that, a few days after the letter of April 29 was written, the president orally told the Deputy Superintendent his company "could not go along with" the proposed endorsement. The Deputy Superintendent replied ·that his Department had no authority to require its use, since its jurisdiction was restricted to the District of Columbia.[2] As a consequence, the endorsement proposed by the letter of April 29 was not made a part of the Certificate of Insurance issued by Amalgamated on June 25, 1946, covering the cab leased to Wise. Instead, the more restricted endorsement of 1943 was used on that and all other certificates of insurance subsequently issued.

■ The administratrix says the parol evidence rule precluded the insurance company from showing that, before the Certificate of Insurance was issued on the Wise cab, it had orally withdrawn the endorsement proposed in its letter of April 29. She also argues Amalgamated was estopped to deny the effectiveness of the new endorsement as to the Wise cab. It is our view that the parol evidence rule does not apply because, in proving the oral revocation of its proposal to use the more liberal endorsement, the insurance company was not attempting to vary the terms of a contractual provision already effective, but was proving that the endorsement in use since 1943 had not in fact been superseded. And there was no estoppel, because the record does not show the decedent relied upon or even knew of the proposed endorsement.

■ Moreover, approval by the Superintendent of Insurance of the form of a proposed endorsement could not, under the governing statute,[3] make mandatory its inclusion in policies of taxicab liability insurance subsequently issued; for the Superintendent, acting alone, has no power to prescribe the terms and conditions of such policies. The compulsory taxicab insurance statute imposes upon the Public Utilities Commission primary responsibility for effectuating its purposes, and expressly provides the taxicab insurance contracts "shall be in such form and on such terms or conditions as the Commission may direct."

■ This is as it should be. The Public Utilities Commission, expert in regulating public transportation service, is obviously the agency which should be charged with the duty of regulating all phases of the taxicab business, including that of prescribing the type of public liability insurance

2. In the opinion filed by the District Court appears the following, which is tantamount to a finding of fact:

"* * * The question of fact to be decided is whether the Insurance Company actually withdrew this proposal of coverage *before it* insured the taxicab involved in the accident causing death of plaintiff's decedent. The testimony of the President of the Insurance Company is definite that before the insurance of the taxicab involved in this case, it was decided not to extend coverage to pleasure driving ·beyond the District of Columbia; that after his letter of April 29, 1946, indicating a proposal *to* make such coverage, he conferred with the Deputy Superintendent of Insurance on the subject and finding the Superintendent had no right to impose insurance coverage beyond the District of Columbia, it was decided not to issue the endorsement proposed; that the Deputy Superintendent of Insurance was so informed.
\*　　\*　　\*　　\*　　\*
"There is nothing in plaintiff's testimony to refute the claim of the Insurance Company that before the taxicab involved in this case was insured, the company withdrew its announced intention to extend insurance coverage to taxi-·cabs operated for pleasure out of the District of Columbia. On the other hand, such claim appears to be supported by testimony of a disinterested witness, Deputy Superintendent of Insurance Stout, \*　\*　\*."
This finding is not erroneous, but is in accord with the undisputed evidence.

3. Section 44–301, D.C.Code (1940).

which must be carried for the protection of passengers and public. The Superintendent, being expert in the insurance field, is directed by the statute to regulate the insurance carriers, to see they maintain adequate reserves, to scrutinize their costs and to fix their rates. Under § 35–1331 of the D.C.Code (1940), all policy forms used by fire, liability and marine insurance companies must be filed with him, and he may disapprove the use of any form which is inequitable or which does not comply with the requirements of law; but the Public Utilities Commission is the only agency which is expressly authorized by statute to prescribe the terms and conditions of taxicab liability policies, the Superintendent's duty being to see that the form of policy accurately and equitably meets the Commission's requirements. Thus Congress carefully co-ordinated the functions of the two expert bodies.

 For the reasons stated, we conclude the District Court was correct in holding that Wise was not covered by Morgan's policy when the accident occurred, and in refusing to hold the insurance company liable to the administratrix.

Our conclusion is buttressed by still another reason: even had the endorsement upon which the appellant relies been officially required to be inserted in all policies written after its proposal, it would avail the appellant nothing, for the master policy includes this definition of the word "insured":

> "The unqualified word 'insured' includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'Pleasure and business', each as defined herein, and *provided further that the actual use is with the permission of the name[d] insured.*" (Emphasis supplied.)

Under this provision Wise was not an "insured" at the time of the accident unless his use of the cab on his pleasure trip was with the permission of Morgan Cab Corporation. As to that, the record contains a written statement signed by Wise, dated March 4, 1947, which is in part as follows:

> "I, Leslie C. Wise, hereby state that I did not get permission from the American Cab Association[4] or the Morgan Cab Corporation to make the trip to Asheville, North Carolina on or about November 12, 1946."

 In his testimony Wise said he did not ask and did not have permission to make the trip, nor did he tell Morgan he intended to make it. Appellant contends nevertheless that, as Wise had possession of the cab twenty-four hours a day from the period when he first rented it until the day of the accident, without active direction from Morgan as to its use, Morgan's consent to the pleasure trip should be implied. The argument overlooks the fact that Wise testified he understood he had leased the cab for use as a taxicab in and around Washington, and not for his private use.

The District Court's decision must be upheld.

Affirmed.

WASHINGTON, Circuit Judge.

I concur in the result, and with most of what is said by the court with regard to the first and principal ground of decision. I would add one further comment. A sound and workable system of taxicab insurance requires that the extent as well as the existence of such insurance be ascertainable by interested persons with a minimum of delay and uncertainty. The administrative measures revealed by the record of this case were not such as would achieve that end. In fact, those measures do not appear to have been either business-like or aptly designed to protect the public interest. As to the secondary and concluding ground of decision, I do not think we reach the issue there discussed. If we did reach it, I would have considerable doubt as to the court's conclusion that "the actual use" of the taxicab was without "the permission of

---

4. The cab bore the insignia and colors of the American Cab Association, of which presumably Wise was a member.

the named insured," within the meaning of those words as used in the omnibus clause. See Behaney v. Travelers Ins. Co., 3 Cir., 1941, 121 F.2d 838; Hartford Accident & Indemnity Co. v. Collins, 5 Cir., 1938, 96 F.2d 83, certiorari denied 1938, 305 U.S. 627, 59 S.Ct. 89, 83 L.Ed. 401; Vezolles v. Home Indemnity Co., D.C.W.D.Ky.1941, 38 F.Supp. 455, affirmed 6 Cir., 1942, 128 F.2d 257; Stovall v. New York Indemnity Co., 1928, 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; Dickinson v. Maryland Casualty Co., 1924, 101 Conn. 369, 125 A. 866, 41 A.L.R. 500.