**354**

Otto ZAHN et al., Plaintiffs,

v.

John P. J. DUHN t/a American Plant Food Company, et al., Defendants.

Civ. A. No. 3352–52.

United States District Court
District of Columbia.

July 8, 1955.

Joseph D. Bulman, and Sidney M. Goldstein, Washington, D. C., for plaintiffs.

Richard W. Galiher, Julian H. Reis, Washington, D. C., for garnishee.

PINE, District Judge.

In this case, Otto Zahn was injured when he was struck by a truck owned by John P. J. Duhn, trading as the American Plant Food Company. He sued Duhn and Douglas A. Jones for damages, claiming that Jones was the operator of the truck. His wife joined, claiming loss of consortium. Duhn answered, making a general denial. Before the case came on for trial, Duhn died, and the action

accordingly was ordered abated as to him. A new action was thereupon instituted in Rockville, Maryland, against Duhn's executor, and is now pending there.

Jones did not answer, and a default, verdict and judgment for damages were entered against him in favor of plaintiffs. The judgment was not satisfied, and plaintiffs garnisheed the New Amsterdam Casualty Company for the amount of the judgment. In answer to the interrogatories filed with the writ, the Casualty Company denied indebtedness to Jones and denied credits of Jones in its possession. It admitted that a certain described Chevrolet truck registered in the name of Duhn (which is the truck involved herein) was covered by a liability policy issued by it, but stated the coverage was confined to persons using the truck with the consent of the named insured. Further, it stated that the policy covered anyone operating the truck with the consent of the named insured, but claimed that Jones was not operating the truck with the consent, permission, or knowledge of the insured at the time of the accident in question, and that there was no coverage provided for Jones under the policy.

Plaintiffs traversed the answer of the garnishee Casualty Company, and this hearing, without a jury, is on the issues raised by the traverse, pursuant to Sec. 16–317, D.C.Code. The ultimate issue is whether Jones was covered by the policy of insurance issued by the Casualty Company to Duhn.

The facts are as follows: Jones and one Elmer Williams were employees of Duhn. Their hours were 8:30 a. m. to 5:00 p. m. On the day in question, they and another employee were assigned to do some lawn maintenance work. They repaired to the address where this work was to be done, in the truck involved. It was driven there by Jones. At 12 o'clock, the half-hour lunch period arrived, and Williams said he did not have his lunch and asked Jones to drive him to his home for lunch. Jones agreed to this, and drove Williams to his home, where an undetermined amount of alcoholic beverages were consumed by both. At about four o'clock, the truck collided with Zahn and was driven away from the scene of the collision. Shortly thereafter, it was found at the address where the maintenance work was to be done, and Jones and Williams were arrested at the same place.

Duhn's place of business was on Blair Road in the District of Columbia. The maintenance work was to be done at an address on Holly Street, also in the District of Columbia. Williams's home was in Takoma Park, Maryland, approximately four miles from the Holly Street address. The collision occurred in Silver Spring, Maryland, about four blocks north of the District line. The truck, immediately before the collision, was traveling in a northerly direction and at the time of the collision was traveling in an easterly direction. In both instances, it was traveling away from the District, away from the place of business of Duhn, and away from the Holly Street address.

The truck in question was assigned to Jones by Duhn. Under instructions from his employer, no one other than Jones was permitted to drive the truck. Prior to this incident, these instructions had not been violated. The truck was assigned to him for use in the "line of his duties." No one asked permission to use the truck to go to the home of Williams on this occasion; no such permission was given; no permission of that kind had ever been given before, and if it had been asked, it would have been refused. It was understood that the employees of Duhn would bring their lunches with them, but if it happened that they did not, although no instance of that sort was known, the manager of Duhn's establishment testified that he presumed they could drive to a store and get a sandwich if within reasonable distance.

■ As to the identity of the driver of the truck at the time of collision, the

evidence is conflicting. Jones testified that he did not drive the truck at the time of the collision, and that the last thing he remembered before the police arrested him was that, upon realizing he was "getting drunk," he left Williams's home and got in the truck to go to sleep. Williams's testimony was unavailable, as he could not be found. The police officers making the arrest testified that they found Jones asleep on the passenger's side of the truck, and that Williams was standing nearby. The third employee was raking leaves. Both police testified, without objection, that Williams stated that he was the driver of the truck. The sole witness to the contrary was a witness called by the plaintiffs, who testified that he saw the accident, followed the truck, and attempted to stop it without success, and that Jones was the driver. He testified that he saw him for about a second, and that Jones was wearing a jacket. On the other hand, Jones testified that he did not wear a jacket on this occasion and never wore one. When the police made the arrest, Williams and not Jones was wearing a jacket. True, it was too small for Williams, and Jones was a smaller man than Williams, and it is conceivable that they shifted jackets to prevent identification, if Williams for some unknown reason wanted to take responsibility for Jones's offense; but in view of their drunken condition, it is difficult to believe that they contrived any such deception. Also, this witness, when the court conducted a line-up, identified a person other than Jones as the driver of the truck. Weighing the evidence and applying the usual criteria, and giving consideration to the fact that Jones has a criminal record and had previously made statements inconsistent with his testimony in respect of matters other than the identity of the driver, I reach the conclusion that plaintiffs have not sustained their burden of establishing by a preponderance of the evidence that Jones was the driver, and I find that he was not and that Williams was. But this finding has little significance in view of the grounds for my decision, as hereinafter set forth.

On the alternative defense of the Casualty Company of non-cooperation by Jones, the facts are as follows:

The summons and complaint against Jones were served by leaving a copy at his place of abode, with his mother. His mother informed Jones of its receipt, but Jones never obtained a copy of the suit papers or transmitted them to the Casualty Company. Neither did he give notice of the accident to the Casualty Company. His testimony, as above stated, was in conflict with the written statement which he gave to a representative of the Casualty Company some eight days after the collision, in the following respects: He testified that he remembered nothing from the time he got into the truck and went to sleep until he was arrested, whereas in the written statement he stated that he awoke when Williams started the truck, but he also stated therein that he was too drunk to remember anything until he awoke in the police station. He testified that he drove to a hardware store to get a spring for the lawn mower, shortly before lunch, after first obtaining permission by telephone from his employer, whereas his written statement was to the effect that he went there at lunch time. He testified that only Williams accompanied him to the store to obtain the spring, whereas in his written statement he said that Williams and the other employee accompanied him. The Casualty Company had notice of the accident and copies of the suit papers, as the same were referred to its agents in the District of Columbia by Duhn, and its counsel filed an answer on behalf of Duhn.

The policy of insurance involved in this case specified Duhn as the insured, and was the usual automobile liability policy containing the so-called omnibus clause, which reads, so far as material herein, as follows:

"With respect to the insurance for bodily injury liability   *   *   *

the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person * * legally responsible for the use thereof, *provided the actual use of the automobile is by the named insured or with his permission*" (Italics supplied).

So much for the facts.

On the hypothesis that Williams was driving the truck at the time of the accident, which I find as a fact, there can be no liability on the part of the Casualty Company under the policy, because on the evidence Williams had no permission of any kind to use the truck, and even assuming Jones could delegate his permission, there is no evidence of such delegation. This latter element, among others, takes the case out of the ruling in Hardware Mut. Casualty v. Mitnick, 180 Md. 604, 26 A.2d 393, 394, heavily relied on by the plaintiffs. In that case, the named insured had given permission to use an automobile, to his granddaughter. The permission was unrestricted, both as to time and place, but she had been instructed to allow no one other than herself to drive it. Nevertheless, she affirmatively did permit another to drive it, with herself as a passenger, at the time and the place of the accident. The Court held that, on these facts, she was "using" the automobile by riding in it while driven by another, and referred to her as the "director of the enterprise" and the "'master of the ship.'" Such characterization would hardly be applicable to Jones, under the circumstances.

However, plaintiffs insist that the default judgment against Jones is res judicata as to the fact that Jones was the driver of the truck at the time of the collision, and that the Court is foreclosed from taking evidence on that point or making a decision thereon, and must decide the case on the premise that Jones was driving the truck. The authorities are not uniform on this proposition, and there is apparently none bearing directly on the subject in the District of Columbia.

But assuming plaintiffs' position in this regard is correct, and assuming that Jones operated the truck at the time of the collision, I would come to the same conclusion of nonliability on the part of the Casualty Company, and this conclusion would be based on lack of permission from Duhn, the named insured, to Jones, at the time and place of the accident. Prior thereto, he had driven the truck to a place beyond the scope of his permission and engaged in a drinking orgy, and at the time of the collision it was being operated in the State of Maryland in a direction away from both Duhn's place of business and the place where he had been assigned to work. The collision was about two miles from the former and about a mile from the latter. This operation was without specific permission from his employer, was outside the general permission given to him to use the truck in the "line of his duties," and was not within the exception to his general permission which allowed him to use the truck to drive to a store to get a sandwich if within a reasonable distance, inasmuch as the distance was not reasonable under the circumstances, and it was not at a time when he was allowed to use the truck for such purpose.

To hold that he had permission from the named insured, Duhn, to use the truck at the place and time of the collision, is therefore untenable unless the initial restricted permission covers by law practically any use thereafter or unless his deviation from a restricted use can be considered to be a minor one. On these points, the United States Court of Appeals for this circuit has spoken, in Bennett v. Amalgamated Cas. Ins. Co., 91 U.S.App.D.C. 279, 200 F.2d 129, and in Hudson v. Lazarus, D.C.Cir., 217 F.2d 344, 346.

The Bennett case, supra, involved a similar clause in an automobile liability policy, and the Court held that a restricted initial permission did not cover an

enlarged use thereafter and that that must be specifically given, if coverage is to be provided.

The Hudson case, supra, was concerned with whether consent had been given within the meaning of the Financial Responsibility Act of the District, which provides that one who drives a motor vehicle with the owner's express or implied consent shall, in case of accident, be deemed to be the agent of the owner of such motor vehicle. Sec. 40–403, D. C.Code 1951. In considering this question, the Court made the following pertinent observation:

"There was, then, uncontradicted proof that Juster consented only to Harris's driving the car back to the service station and did not consent to his going, or even stopping, for breakfast. Juster's consent perhaps extended, by implication, to driving back to the station by a more or less circuitous route. But when Harris collided with Hudson, he was not driving back to the station by *any* route. He was driving *away* from it. We agree with the District Court that he was clearly not driving with Juster's consent." (Italics supplied.)[1]

Unless resort be had to semantics, I would assume for this workaday world that "consent" as used in the Act and "permission" as used in a liability insurance policy may be considered as practically synonymous. Indeed, that is borne out by another provision of the Financial Responsibility Act, which requires that liability policies shall insure the named insured and any other person using the motor vehicle with the *consent*, express or implied, of such insured. This would indicate that the words are used interchangeably. On this assumption, the Hudson case is strong, if not compelling, authority for holding that the use of the truck as above outlined on the occasion in question was not a minor deviation from the permission given and was not within the permission. But aside from this decision, the time element alone would appear to take the operation of the truck out of the zone of a minor deviation.

Concluding, as I do, that there was no coverage for Jones for the reasons above stated, it is not necessary to decide whether the Casualty Company is relieved from liability by reason of failure of cooperation on the part of Jones, but the facts in this respect are hereinabove set forth for appellate review in case the same is sought and the Court of Appeals reaches this point.

Accordingly, judgment will be entered for the garnishee.

Because the facts and conclusions of law are set forth herein, it will be unnecessary for counsel to submit further findings as provided by Rule 52, Fed. Rules Civ.Proc. 28 U.S.C.A.

---

1. The accident occurred "more than a mile" from the service station.