NATIONWIDE MUTUAL INSURANCE COMPANY, a corporation, Appellee,

v.

NEW AMSTERDAM CASUALTY COMPANY, a corporation, Appellant.

No. 10842.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 10, 1967.

Decided April 3, 1967.

Herbert G. Underwood, Clarksburg, W. Va. (Steptoe & Johnson, Clarksburg, W. Va., on brief), for appellant.

Russell L. Furbee, Fairmont, W. Va. (Harry H. Bryer, Martinsburg, W. Va., and Furbee, Hardesty, Critchfield & Whyte, Fairmont, W. Va., on brief), for appellee.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge.

Whether Nationwide Mutual Insurance Company ("Nationwide") or New Amsterdam Casualty Company ("New Amsterdam") could be liable to pay judgments totalling $26,000.00 against Charles A. Bellows for his negligence in an automobile accident is the question to be decided. Bellows was an insured under a policy issued by Nationwide to his mother, having applicable limits of $100,000.00, which contained a provision constituting it excess insurance where other collectible insurance was applicable. Admittedly, Nationwide was liable unless its policy was excess insurance. Bellows' accident occurred in West Virginia, while he was operating an automobile rented from Jet Rent-A-Car Corporation ("Jet") which was insured by New Amsterdam under a policy, having applicable limits of $300,000.00, and which afforded protection to Jet, as the named insured, and "any person while using the automobile * * * provided the actual use of the automobile is by the named insured * * * or with [its] * * * permission." On cross motions for summary judgment, the district judge adjudged New Amsterdam liable, thus exonerating Nationwide because its policy was excess insurance. We think New Amsterdam's policy may be inapplicable and, therefore, we reverse the judgment against New Amsterdam and remand the case for further proceedings.

Additional facts, uncontroverted in the affidavits supporting the cross motions, need be stated. Jet, neither a common carrier nor a public utility, was engaged in the car rental business in the District of Columbia. On March 22, 1963, Bellows, then a student at Greenbrier Military School, Lewisburg, West Virginia, rented a 1963 Chevrolet automobile from Jet. The contract of rental provide, *inter alia*, that the vehicle was "not to be removed from the District of Columbia," except on written permission of Jet, and that the lessee's right "to use or operate the vehicle" and his right "to coverage and protection as renter under Jet's public liability and property damage insurance policy" both "shall terminate forthwith and be null and void if the renter allows the vehicle to be used, operated or driven: (a) in violation of any terms or conditions of this contract or * * * (b) to transport persons or property for hire, or as a public conveyance * * * or (f) by the renter or any other person giving to Jet a false or fictitious * * * address * * *." New Amsterdam pleaded that permission, written or oral, to take the car from the District of Columbia was never given by Jet to Bellows. This allegation does not appear to be specifically denied except in an affidavit of Bellows, filed in support of Nationwide's motion for summary judgment, that Bellows was led to believe at the time that he rented the car that he could take it where he pleased. Bellows signed the lease in his true name and gave his correct home address in Southampton, New York. He denies that a false representation, in the space provided, that his "Local Address" was "Georgetown Univ. Phi Sigma Kappa Dorm." was completed when he signed the lease.[1] The accident occurred near Charles Town, West Virginia, a distance of 75 miles from the District of Columbia, the day after the automobile was rented.

The District of Columbia had in effect, at the time Bellows rented the car, a statute which, with certain exceptions not material here, directed the Public Utilities Commission of the District of Columbia to require persons, "operat-

---

1. Because we review a judgment entered on motion for summary judgment, we put aside this disputed fact. On remand this issue may be litigated if the parties so desire.

ing, controlling, managing, or renting any passenger motor vehicles *for hire* in the District of Columbia * * * " (emphasis supplied) to have insurance for death or injury of $10,000.00 per person and $20,000.00 per accident. D. C.Code (1961 Ed.) § 44–301. The statute was first enacted in 1938. It was last amended in 1958 and, by virtue of that amendment, is now known as "District of Columbia Taxicab Insurance Act of 1958." An affidavit of the Executive Secretary of the Public Service Commission of the District of Columbia (successor to the Public Utilities Commission of the District of Columbia) established, without contradiction, that Jet did not voluntarily comply with the Act and that the Commission has required neither Jet nor any other car rental agency to comply. In his affidavit, the Executive Secretary further stated that since the date of his appointment (February 5, 1962), the Commission had required only taxicabs and sightseeing vehicles to comply with the Act.

Nationwide contends that Bellows had Jet's permission to use the car even in West Virginia, thereby making him an additional insured under New Amsterdam's policy; but that, in any event, Jet rented the automobile "for hire" so that insurance coverage under New Amsterdam's policy was controlled by the District of Columbia Taxicab Insurance Act with the amount of such coverage as stated in New Amsterdam's policy. New Amsterdam contends that there is at least a disputed question of fact as to whether Bellows was an additional insured, and that the Act was inapplicable to Jet. Even if Jet were subject to the Act, New Amsterdam claims that it is not liable for any sum greater than the amount of coverage the Act required.

■ We view the record as raising a disputed question of fact as to whether Bellows was an additional insured; summary judgment was hence inappropriate relief. In support of New Amsterdam's motion for summary judgment, the record shows that New Amsterdam's policy afforded coverage to Jet and persons having Jet's permission to use the automobile. The rental agreement, which was the source and limit of Bellows' permission, provided that if Bellows took the automobile outside of the District of Columbia without the written permission of Jet, the insurance provided by Jet was voided. Even in the absence of the latter provision, there is authority that Bellows would cease to be an additional insured if he violated the terms of the rental agreement. Boyd v. Liberty Mutual Ins. Co., 98 U.S. App.D.C. 107, 232 F.2d 364 (1956); Bennett v. Amalgamated Casualty Ins. Co., 91 U.S.App.D.C. 279, 200 F.2d 129 (1952); Collins v. New York Casualty Co., 140 W.Va. 1, 82 S.E.2d 288 (1954). Indeed, depending upon Bellows' intent and knowledge when he took the automobile to West Virginia, he might even be held criminally liable for violation of the Dyer Act, 18 U.S.C.A. § 2312. United States v. Turley, 352 U.S. 407, 77 S. Ct. 397, 1 L.Ed.2d 430 (1957); United States v. Dillinger, 341 F.2d 696 (4 Cir. 1965); United States v. Jones, 340 F.2d 599 (4 Cir. 1965); United States v. Welborn, 322 F.2d 910 (4 Cir. 1963). By its terms, New Amsterdam's policy, read solely in the light of the rental agreement, would have no application to Bellows when and where the accident occurred.[2]

---

2. In stating this conclusion, we also state what we do not decide. We are aware that because of the geography of the District of Columbia, and the spillover of urban development into nearby Maryland and Virginia, a person renting a car in the District of Columbia and desiring to go from one place in the District to another might quite innocently traverse a portion of an adjoining state and unfortunately have an automobile accident in the latter.

We do not think, however, that a 75 mile trip into West Virginia is such a minor deviation as we have suggested might sometime occur. Cf. Collins v. New York Cas. Co., 140 W.Va. 1, 82 S.E.2d 288 (1954); Senator Cab Co. v. Rothberg, 42 A.2d 245 (D.C.Mun.App.1945). We express no opinion on the minor deviation case; we will decide it if and when it is appropriately presented.

But whether the case is to be determined solely by the terms of New Amsterdam's policy, read in the light of the rental agreement, is a matter which cannot be finally decided on this record. Nationwide has filed Bellows' affidavit, in support of its motion for summary judgment and that affidavit is to the effect that Bellows was led to believe, at the time he rented the car, that he might take it where he pleased. The affidavit thus suggests that oral permission to take the car outside of the District of Columbia was given, the requirement of written permission being waived, that the parties waived in its entirety the requirement of the contract that permission was needed to take the car outside of the District of Columbia, that Jet is estopped to deny Bellows' permission, or possibly even that the parties made a new and superseding oral contract after the written contract was integrated. Cf. Jackson v. District of Columbia, 200 A. 2d 199 (D.C.App.1964). These possible answers to the apparent meaning of the written documents must await evaluation and determination until an evidentiary hearing.

■ New Amsterdam's policy was not made applicable to Bellows for an accident in West Virginia by the District of Columbia Taxicab Insurance Act of 1958. On its face the statute has application to persons who rent passenger motor vehicles "for hire;" not, as Nationwide contends, to all persons who rent motor vehicles. "For hire" is usually a word of art and, in the field of transportation, denotes a common or contract carrier. Jet was clearly not these. It rented automobiles; it did not sell a transportation service as such. While it rented automobiles for a charge, it specifically prohibited its lessees from using the vehicles rented to them for the transportation of persons or property "for hire;" and nothing in this record gives support to any claim that Bellows was transporting the two fellow-students, who were with him when the accident occurred, for hire.

■ While the Act has not been authoritatively interpreted by any decision to which we are referred by counsel, or which we have found, as to whether Jet, or persons doing a similar business, are within the terms of the Act, the administrative interpretation that they were not is entitled to weight. On two occasions on which the United States Court of Appeals for the District of Columbia has had occasion to refer to the Act, it has characterized it as a statute intended by Congress to regulate the operation of taxicabs as common carriers. Thompson v. Amalgamated Casualty Ins. Co., 92 U.S.App.D.C. 307, 207 F.2d 214 (1953); Bennett v. Amalgamated Casualty Ins. Co., supra. We conclude that the Act had no application to Jet in this case.

It is true, as Nationwide argues, that in Smith v. Indemnity Insurance Co. of North America, 115 U.S.App.D.C. 295, 318 F.2d 266 (1963), it was held, with a dissent by Bastian, J., that a decedent killed while he was driving a Hertz Rent-A-Car automobile to go to an airport as part of his return from a business convention was killed while in "any land conveyance licensed for the transportation of passengers *for hire*" (emphasis supplied) within the meaning of a policy of accident insurance providing coverage against that hazard. A fair reading of the majority opinion, however, makes clear that the deciding factor in that decision, absent in the instant case, was that an insurance policy should be construed strictly against the insurer.[3] This, coupled with the fact that the

---

3. "Though we cannot say the policy clearly covers the case or that the construction adopted by the District Court [non-coverage] is not a reasonable one, we cannot escape the conviction that the circumstances which transpired, considered with the language of the policy, give rise to a considerable doubt that the courts should read the policy to exclude this accident from its coverage. When that doubt is resolved favorably to the insured, as it must be, such conclusion cannot be upheld." Id., 318 F.2d at p. 269.

deciding court was the same court which had decided the *Thompson* and *Bennett* cases and treated the Act as applicable only to common carriers leads us to conclude that the *Smith* case does not require a contrary result.

We reverse the judgement of the district court, and remand the case for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

CRAVEN, Circuit Judge (concurring):

Anyone who has rented a car from Hertz, Avis, or even Jet knows the printed contract comes with the car—sometimes shoved in the glove compartment as you drive off. Its terms are not freely negotiated between coequal parties. Such circumstances do not necessarily invalidate the provisions of the printed contract as between the parties, but certainly the true nature of the transaction ought to be considered in interpreting and applying the purported agreement as it affects others—especially victims of motor vehicle collisions.

The ordinary common sense meaning of an omnibus clause in an insurance policy ought not be changed by reference to a not so sacrosanct printed contract of rental. In my opinion, Bellows had "permission" to drive the rental car within the meaning of the omnibus clause in the New Amsterdam policy. That he was driving it seventy-five miles away from where he should have been under the rental contract, however important in other relationships, e. g., agency, should be an irrelevancy to liability coverage. Exclusions of coverage belong in insurance policies—not in printed rental contracts.

In Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 208 F.2d 250, 256 (4th Cir. 1953), Judge Dobie spoke eloquently of the duty of this court in construing omnibus clauses in insurance policies:

"Our own decisions, we think, show a strong tendency toward a liberal interpretation, in favor of the insured, of the 'omnibus clause.' This clause should not be construed and applied, from a purely analytical viewpoint, under a literal interpretation of the words of the policy. The spirit, not the letter, should control. Statutes requiring the insertion of the 'omnibus clause' in automobile liability policies reflect a clear cut policy to protect the public. They should be construed and applied so as to carry out this policy." [1]

I concur in the result.

1. Compare Judge Fahy's dissenting opinion in Boyd v. Liberty Mut. Ins. Co., 98 U.S. App.D.C. 107, 232 F.2d 364, 365 (1956), and Judge Washington's concurring opinion in Bennett v. Amalgamated Cas. Ins. Co., 91 U.S.App.D.C. 279, 200 F.2d 129, 133 (1952).