DON SAVERY, Appellee, v. L. E. KIST, doing business as KIST MOTOR FREIGHT LINES, et al., Appellants.

CLYDE T. CAMPBELL, Appellee, v. L. E. KIST, doing business as KIST MOTOR FREIGHT LINES, et al., Appellants.

LAFE KENYON et ux., Appellees, v. L. E. KIST, doing business as KIST MOTOR FREIGHT LINES, et al., Appellants.

No. 46271.

SEPTEMBER 21, 1943.

REHEARING DENIED NOVEMBER 19, 1943.

Whitfield, Musgrave & Selvy, of Des Moines, for appellants.

Helsell, Burnquist & Bradshaw, of Fort Dodge, and R. Kent Martin, of Atlantic, for appellees.

MULRONEY, C. J.—The suits brought by the plaintiffs stem from an automobile accident that happened on August 23, 1940, in Atlantic, Iowa. On that day a tractor-and-trailer combination proceeded unattended down an alley and street in Atlantic and crashed into the U-Z-U Rite Café, damaging the building and the café equipment, and injuring a patron in the café. The owner of the building, the operator of the café, and the injured patron are the plaintiffs whose suits against the truck owner were consolidated. Before the cases came on for trial the Central Surety and Insurance Corporation of Kansas City, Missouri, started an action in federal court for a declaratory judgment to determine its rights and liabilities as an insurance carrier covering the tractor but not the trailer involved in the accident. The plaintiffs and the defendant truck owner were parties to that suit and an attempt was made to interplead the Hawkeye Casualty Company of Des Moines, the carrier of insurance on the trailer, but the interpleader was refused by the federal court. The declaratory-judgment suit resulted in a settlement whereby the Central Surety and Insurance Corporation paid $2,250, taking a covenant not to sue. Thereafter the defendant Kist, the owner of the truck and trailer, filed his petition in bankruptcy, and the plaintiffs filed their claims, which were allowed by the referee but the allowance was set aside upon appeal to the federal district court and the plaintiffs were ordered to proceed in the district court of Wright county to liquidate their claims.

In the first consolidated case, against the defendant Kist, it

was stipulated that of the $2,250 paid by the Central Surety and Insurance Corporation the plaintiff Don Savery, the injured patron in the café, received $1,000; the plaintiffs Hazel and Lafe Kenyon, the operators of the café, received $714.60; the plaintiff Clyde T. Campbell, the owner of the café building, received $500; and that the balance was paid to others not parties to this lawsuit. The court instructed the jury that if they found for the plaintiffs they should find the total amount to which each plaintiff was entitled and deduct from said total amount the amount already received. The jury returned a verdict for the plaintiff Don Savery in the total amount of $6,000, and credited him with $1,000, leaving a balance of $5,000, and a verdict for Clyde T. Campbell in the sum of $640, and credited him with $500, leaving a balance of $140, and a verdict for Lafe and Hazel Kenyon in the sum of $1,165, and credited them with $714.60, leaving a balance of $450.40. Defendants appeal from such judgments. We will first dispose of the assignments of error in the first consolidated case.

I. The defendant Kist urges the trial court erred in overruling various grounds of his motion for directed verdict to the effect that there was no evidence of defendant's negligence. The gist of the argument is that the plaintiffs did not plead general negligence and therefore res ipsa loquitur does not apply. The plaintiffs pleaded:

"That in the forenoon of said day the said defendant, through his agents and employees, permitted said tractor and trailer, loaded with merchandise which he was hauling for hire, to operate without a driver or person in control in and upon the alleys and streets of the Town of Atlantic, Iowa, up against and into a certain business building known as U-Z-U Rite Café."

The defendant Kist, as plaintiffs' witness, testified that on the day that one of his trucks ran into the café in Atlantic the truck was being operated by one of his truck drivers who was in sole charge thereof. Another eyewitness testified she saw the driverless truck come down the alley in Atlantic and run into the café. Defendant offered no testimony tending to show how the truck got started down the hill. The driver was not called to the stand.

We think the proof sufficient under the pleadings to make out a prima facie case of negligence. We do not consider the pleaded negligence specific. Under the facts, it was a general allegation of negligence. In the case of Gordon v. Chicago, R. I. & P. Ry. Co., 129 Iowa 747, 752, 106 N. W. 177, 178, Justice Weaver, speaking for the court, commented upon what would have been a general allegation of negligence in a suit against a railroad, stating:

"If, therefore, the plaintiff had in this case alleged that defendant had negligently permitted a certain dangerous defect to be and remain in its roadbed, whereby plaintiff, without fault on his part, had been injured, he would have stated all that was necessary to constitute a cause of action."

If this be a general-negligence allegation in a case involving defective premises, then plaintiffs' pleading that defendant "permitted said tractor and trailer * * * to operate without a driver * * *" is sufficiently general to warrant the application of the doctrine of res ipsa loquitur.

In Firszt v. Capitol Park Realty Co., 98 Conn. 627, 643, 120 A. 300, 306, 29 A. L. R. 17, the same point was made in a suit against the owner of a public-amusement device, and the court stated:

" * * * there is a general allegation that plaintiff's injuries were caused 'by the negligence of the defendant, its servants, agents and employees, in that they negligently constructed, maintained and operated the aforementioned "aeroplane swing," or by the exercise of ordinary care could have known that said swing was dangerous to said plaintiff.' This is simply a general allegation of negligence."

The court held this pleading and proof presented a case of reliance upon the rule of res ipsa loquitur.

In Sheridan v. Arrow Sanitary Laundry Co., 105 N. J. Law 608, 611, 146 A. 191, 192, the court stated:

"The unexplained presence upon the public highway of this 'runaway' motor truck, without driver or occupant, moving along the highway to the far side thereof, mounting the curb and doing serious physical injury to a person lawfully there,

raises a prima facie presumption of negligence on the part of the owner and on the part of the owner's employe in whose charge the car was.''

To the same effect is Elliott v. Seattle Chain & Mfg. Co., 141 Wash. 157, 160, 251 P. 117, 118, where the court stated:

'' * * * the fact that the respondent was run into by appellant's [driverless] car, resulting in injury to him, raised a presumption of negligence on the part of the appellant and established a prima facie case for the respondent.''

See, also, 2 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., 347, 350, section 1206.

The plaintiffs had no theory of how the truck was started down the alley. There was no allegation of negligent parking or defective brakes. Whatever explanation there is must be within the knowledge of the defendant and his driver.

No explanation can be found in defendant's testimony. The doctrine of res ipsa loquitur is a rule of evidence and it is based on the theory that he who has charge of the thing that causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it. 38 Am. Jur. 995, section 299; Van Heukelom v. Black Hawk Hotels Corp., 222 Iowa 1033, 1043, 270 N. W. 16, and cases cited. It is applicable to create an inference or presumption of negligence when the accident is one that would not in the ordinary course of things occur if proper control were exercised. 38 Am. Jur. 989, section 295. See, also, 9 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., 203, section 5983.

We conclude that under the facts of this accident the allegations of the petitions were sufficiently general. The allegation of injury caused when defendant Kist's fourteen-ton truck and trailer were in some manner permitted to run without a driver into a restaurant is a general allegation which, if proven, will make out a prima facie case for each plaintiff. The plaintiffs could not have pleaded much less and have a petition legally sufficient; they did not attempt to plead more.

II. Defendants assign error in failing to direct the verdict on the plea that the covenant not to sue constituted a release

and accord and satisfaction. The covenant not to sue, entered into with the Central Surety and Insurance Corporation, contained the following clause:

"It is specifically understood by the parties hereto that this covenant not to sue is entered into without prejudice to any claims or rights which Don Savery, Lafe Kenyon, Hazel Kenyon, Clyde T. Campbell * * * may have against Carma Kist, L. E. Kist, Kist Truck Lines, Inc., or any insurer of the said Kists, except the Central Surety and Insurance Corporation of Kansas City, Missouri, and shall not be construed, as the settlement or part payment of said claims."

Whatever might be said about this covenant not to sue, it clearly was not a covenant not to sue Kist. It constituted no settlement at all of the claims of the plaintiffs against Kist. By signing this instrument Kist estopped himself from asserting that any claims of the plaintiffs were settled. We find no error under this assignment. This completes the assignments of error in the first consolidated case against Kist. For the reasons stated, we conclude no error occurred.

III. In the second consolidated case, against the defendant Hawkeye Casualty Company, the plaintiffs sought judgments against the defendant as Kist's insurer for the amount of the judgments they had obtained against Kist in the first case. The defendants admitted the execution of the policy describing the trailer, but pleaded exclusion clause B of the policy providing that the policy does not apply "* * * while any trailer covered by this policy is used with any automobile not covered by like insurance in the company." Since plaintiffs in their petition and reply alleged the policy was a statutory policy filed with the Iowa State Commerce Commission, under section 5105.15 of the 1939 Code of Iowa, rendering the company liable for all damages caused by the negligent operation, the issue was whether exclusion clause B applied.

In this trial the evidence showed that Kist had so departmentalized his trucking business that he did private intrastate trucking for Charles Hewitt & Sons under the name of his wife,

Carma Kist, and interstate hauling under the name of Kist Truck Lines, Inc. He held a truck-operator's permit under chapter 252.3, Code of 1939. On the morning of the accident he used a tractor ordinarily used in the trucking for Hewitt & Sons and attached it to a trailer ordinarily used by the corporation in interstate hauling. The regular trailer ordinarily used with this tractor had a broken axle. The trailer was loaded with Hewitt & Sons' merchandise to be delivered to points in Iowa. As previously pointed out, the tractor was covered by the Central Surety Corporation policy, which company settled on the covenant not to sue, and only the trailer was covered by the Hawkeye Casualty Company policy. Section 5105.15 [at the time this cause of action arose] provided as follows:

"No permit shall be issued until and after the applicant shall have filed with the commission an insurance policy, policies or surety bond, in form to be approved by the commission issued by some insurance carrier or bonding company authorized to do business in this state, in such amount as the commission may deem necessary to protect the interests of the public with due regard to the number of persons and amount of property involved, which insurance policy, policies or surety bond shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such motor truck and for which such truck operator would be legally liable. Such insurance policy, policies or surety bond shall also provide that any person, firm, association or corporation having a right of action against such truck operator for injuries to persons or loss of or damage to property, may bring action for recovery directly upon such insurance policy, policies or surety bond against such insurance carrier or bonding company when service cannot be obtained on the truck operator within this state. No other or additional policies or bond shall be required of any truck operator by any city, town or other agency in the state." Similar section, section 5100.26.

The Iowa State Commerce Commission by its rules and regulations required an endorsement on every policy filed by a truck operator, "To cover the assured's legal liability as a

truck operator for personal injury * * * resulting therefrom * * *'' and also for property damage ''notwithstanding anything in the policy * * * to the contrary.'' The required endorsement further provided, ''The obligations and promises of this endorsement shall be effective only while the equipment covered by this policy is being operated within the state of Iowa under the provisions of Chapter 252-C1, Code of Iowa, 1931 [1935].'' (Now chapter 252.3, Code of Iowa, 1939.)

By agreement of counsel the case was tried to the court without a jury and the trial court rendered judgment for the plaintiffs for the amount of the judgments secured against Kist in the first suit.

Defendant insurer contends that at the time of the accident the trailer was not being operated in Kist's business as a public hauler and therefore the statutory endorsement on the policy had no application, and, if this be true, it was relieved of liability by reason of exclusion B in the policy because the trailer was being pulled by a tractor not insured by defendant.

Although we are here confronted with a question involving the interpretation of the insurance policy, we need not look to the language of the policy or to the endorsement required by the commerce commission rules. It is admitted it is a filed statutory policy required by section 5105.15. This being true, we need only look to the statute to determine the extent of the policy obligations. In Schulte v. Great Lakes Forwarding Corp., 228 Iowa 1012, 1017, 291 N. W. 158, 160, we said, concerning such policies of insurance:

''The policy of insurance here sued upon was issued pursuant to section 5105-a26 of the Code, 1935 (section 5100.26 of the Code, 1939). It is a statutory policy and its obligations are to be measured and defined by the statute requiring it.''

Section 5100.26 requires the filing of an insurance policy for a permit as a motor carrier and it is identical with section 5105.15 requiring a policy for a public truck operator.

In Curtis v. Michaelson, 206 Iowa 111, 118, 219 N. W. 49, 52, we said, in a case where a statutory bond under section

5105-a26, Code of 1927 (now 5100.26, Code of 1939), was involved:

"It is well settled that the liability of a surety under a statutory bond is measured and defined by the statute requiring the bond. Additions to the bond will be treated as surplusage, and omitted provisions will be read into it. [Citing cases.] The railroad commission, although it was directed by statute to approve the form of the bond, had no power to authorize a departure from the requirements of the statute."

We have included in our quotation of section 5105.15 the code editor's note to the effect that 5100.26 is a similar section, for we wish to further discuss the Curtis case decided under that section. In the Curtis case we stated:

"In construing a statute, it is proper to take into consideration the mischief sought to be remedied. [Citing cases.] * * * One of the purposes for which the instant bond was required was to give an injured person, a member of the public, some protection and redress when injured by an irresponsible bus driver. It may also be noted that a statute intended for public benefit is to be taken most strongly against those who claim rights or powers under it, and most favorably to the public. Hawkeye Portland Cement Co. v. Chicago, R. I. & P. R. Co, 198 Iowa 1250. This is a rule of sound public policy, which finds application in the instant case, since we have before us a statute designed to benefit the public—to protect and safeguard its interest."

Let us look at the obligation clause in section 5105.15, which, under the above authority, is the obligation clause of the insurance policy. In plain and unambiguous language it provides that the obligation of the insurance policy or bond shall "bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such motor truck and for which such truck operator would be legally liable." Of this similar obligation in the carrier bonds, we stated in the Curtis case, at page 117 of 206 Iowa, page 51 of 219 N. W.:

"It will be observed that the obligation is to make compensation for injuries to persons and damage to property resulting from the operation of such motor carriers. It was an obligation that had to be assumed by some company authorized to do business in this state, and clearly there must be no evasion, equivocation, or reservation whatsoever connected therewith. Such obligation could not be abridged or modified in any form of bond that the board of railroad commissioners might approve. The obligation was not upon the motor bus operator, but was directly upon the company issuing such liability insurance policy; since the statute reads that the obligors—or, in other words, the sureties under such bond—shall be bound to make (which means to pay) compensation for such injuries and damages. There can be no question whatever as to the intent of the legislature in requiring a liability insurance bond to be filed by each applicant for a license to operate motor busses, and that such bond must be issued by a company authorized to do an insurance or surety business in this state. The legislative intent is to provide security for persons who might suffer personal injuries or damage to their property by reason of the operation of such motor busses. The statute contemplates that the greatest security possible is to be afforded the public in the claim for injuries to persons and property. The bond in this case was so filed."

The statutory obligation was designed to give a right of action against the surety or insurance company in favor of one who is damaged in his person or property as a result of the operation of the truck and trailer in such a manner as to render the truck operator liable. The truck operator has here been held legally liable for damages to the person of one plaintiff and the property of the other two, which damages were all caused by the operation of the truck and trailer. The only limitation that we can see in the statute is a damage claim "resulting from the operation of such motor truck." Neither the commerce commission nor this court can add "while operating under the permit granted."

Nor are we influenced by the decisions of other jurisdictions decided under other state statutes. Hawkeye Casualty Co. v.

Ilalferty, 8 Cir., Mo., 131 F. 2d 294, 296, 297 [certiorari denied, 318 U. S. 758, 63 S. Ct. 533, 87 L. Ed. 1131], cited by the defendants, held that under the Missouri common-carrier statute the carrier was relieved of liability if at the time of the accident the truck operation was not under the permit. The portion of the Missouri statute set forth in the opinion shows that the policy must be "in such sum and upon such conditions as the commission may deem necessary * * *." [Revised Statutes of Missouri, section 5729.] The Missouri Public Service Commission by regulation required an endorsement on the policy giving complete coverage for personal injury or property damage resulting from the operation of the motor vehicle "operated by the assured pursuant to the Certificate of Convenience and Necessity issued by the Public Service Commission of Missouri * * *." The court held:

"The endorsement of the Missouri Public Service Commission applied only to motor vehicles operated in the business of common carriers and was without application in the case of a motor vehicle not so used or operated."

The case can be distinguished because the Missouri statute did give to the commission the power to make conditions which the commission thought necessary in the policy. No such power is granted to the Iowa Commerce Commission under section 5105.15. The authority of the case is much weakened by the dissenting opinion of Circuit Judge Woodrow, who pointedly remarks, at page 299, that under the majority opinion the public has no recourse for injuries "* * * resulting from some of the most common, continuing and omnipresent dangers universally incident to the operations of such truckers * * *" such as "* * * driving a truck that is empty of merchandise back to its garage at the close of day * * *."

In Foster v. Commercial Standard Ins. Co., 10 Cir., Kan., 121 F. 2d 117, 119, cited by defendant, the circuit court of appeals recognized the power of the legislature to provide a complete coverage policy, stating:

"No doubt the Legislature could have required as a prerequisite to the issuance of a permit that the applicant therefor

file an indemnity policy protecting the public against all loss resulting from the operation of the truck, whether operated in the business of a contract carrier or for pleasure, or otherwise.''

But the court held the Kansas statute only provided for insurance coverage when the truck was being operated "pursuant to the permit." The federal court was, of course, bound by a decision of the Supreme Court of Kansas, Smith v. Republic Underwriters, 152 Kan. 305, 308, 103 P. 2d 858, 860, where that court interpreted its state statute to provide for insurance coverage only when the operation was "under or pursuant to the permit." It is, however, interesting to note that in the Republic Underwriters case the Supreme Court of Kansas had before it a case where the Chevrolet truck involved in the accident was not specifically covered in the filed policy. It was admitted that there was a waiver of description, but the court confined its decision to the situation where a truck not described in the policy is involved in an accident while it is not being operated "pursuant to the permit." In that situation the Kansas Supreme Court stated:

"* * * in determining whether there was insurance coverage, a material question was whether the vehicle, at the time of the accident, was being operated under or pursuant to the permit." Then the court added:

"That would probably be true even if the policy had described the Chevrolet instead of describing a truck not involved in the accident. *However, that question is not before us here.*" (Italics ours.)

That question which was not before the Kansas Court is the one that is before us, and we conclude that, under the Iowa statute, complete coverage was required as a prerequisite for the issuance of the permit and the insurer's liability for injuries caused by a truck or trailer described in the filed policy is limited only by the established legal liability of the truck owner and the maximum-amount liability of the policy.

IV. Defendant casualty company alleges error because under the pro rata clauses in the policies of Central Surety Company and Hawkeye Casualty Company it would

only be liable for one half of the full $6,000 judgment obtained by the plaintiff Savery for personal injuries. The pro rata clauses in the policies are in the following language:

"If the named insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability expressed in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

A short answer to defendant's whole argument is that this clause, like exclusion B, goes out of the policy once we hold the filed or statutory policy applicable. It is not for this insurer to state the "limit of liability" to a member of the public injured by a vehicle described in the policy. The limit will be the amount fixed by the commission pursuant to the authority granted by section 5105.15, Code of 1939. In Leach v. Commercial Sav. Bk., 205 Iowa 1154, 1175, 213 N. W. 517, 526, we had occasion to decide a similar question under a statutory bond. The bond had a similar pro rata clause under which the surety argued for a reduction of its liability. We there stated:

"The bond was given for the sole purpose of complying with the statutory requirement. * * * The second provision of the bond above quoted, that the surety thereunder should be liable only for such portion of the total loss sustained by the obligee as the penalty of the bond should bear to the total amount of bonds of other sureties furnished by the principal to the obligee, was inconsistent, not only with the former recitals of the bond, but with the express provisions of the statute. * * * The provisions in addition to those required by the statute must be rejected as surplusage."

The policy fixes the limits of $5,000 to each person injured and $10,000 for total personal injuries. Here only one plaintiff, Savery, sought personal injuries. His judgment for $5,000 against Kist is a $5,000 personal-injury judgment. The defendant insurer became liable to pay this on the day it was rendered. He should now pay to the plaintiff, Savery, $5,000, with interest

at the rate of five per cent from the day Savery secured the judgment against Kist in the first action.

Under Division II of the policy, in the insuring agreements, the defendant insurer became liable for the court costs in Savery's suit against Kist in addition to the applicable limits of the policy.

Because of what we have here said, it is unnecessary to discuss the trial court's theory that the settlement with the Central Surety Company on the covenant not to sue was only a partial settlement. After all, the trial court did allow the Hawkeye Casualty Company the full benefit of the settlement by way of a credit, under the doctrine of Greiner v. Hicks, 231 Iowa 141, 300 N. W. 727, and the plaintiffs do not appeal.

For a case involving much the same point, although the pro rata clause was not specifically involved, see Dekat v. American Automobile Fire Ins. Co., 146 Kan. 955, 961, 73 P. 2d 1080, 1083. Here a judgment for $6,826.65 was obtained against the truck owner. The court held two insurance companies, with filed policies of $5,000 maximum liability each, were his insurers. The court rendered judgment for the plaintiff against each insurance company for $5,000, providing, however, that the total recovery of the plaintiff from the two insurance companies should not exceed $6,826.65 plus interest and costs. But because all the parties were before the court, the court further provided: "* * * that as between the insurance companies each shall be liable to the other for any amount paid by it to plaintiff in excess of one half of the judgment for $6,826.65, plus interest and costs."

We cannot in this action, where only one insurance company is present, determine the liability of one insurance company to the other. We can only say that in no event shall it prejudice the right of Savery to recover from the defendant Hawkeye Casualty Company within the maximum liability provided for in the policy.

Judgments for the plaintiffs in both cases are affirmed.— Affirmed.

OLIVER, HALE, BLISS, MILLER, GARFIELD, WENNERSTRUM, and MANTZ, JJ., concur.

SMITH, J., dissents from Division I, and specially concurs in Divisions II, III, and IV, and in result.

SMITH, J. (specially concurring)—I concur in the result reached by the majority but do not believe the doctrine of res ipsa loquitur applies. The petitions alleged that defendant "permitted said tractor and trailer * * * to operate without a driver or person in control in and upon the alleys and streets * * * [and] up against and into a certain business building * * *."

The pleader was not content to allege generally the mere happening of the accident, allowing it "to speak for itself." He added the allegation that the vehicle was being operated "without a driver or person in control." I think such operation of a vehicle upon a public street is itself an act of negligence. The pleader was not relying on "res ipsa." He pointed out the very negligence relied on. Proof of such operation was direct proof of negligence. It made a prima facie case when coupled with proof that as a result plaintiff was injured. No resort to the doctrine of res ipsa loquitur is either proper or necessary to sustain the decision of the trial court.

I therefore dissent from Division I of the opinion and concur in the rest and in the result.