## THOMPSON v. AMALGAMATED CAS. INS. CO., Inc.

### No. 11279.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 9, 1953.

Decided June 5, 1953.

Petition for Rehearing in Banc
Denied Oct. 13, 1953.

Mr. Frank S. Morgan, Arlington, Va., for appellant. Mr. David H. Thompson, Arlington, Va., also entered his appearance.

Mr. Albert F. Adams, Washington, D. C., with whom Messrs. Daniel J. Freed and Sumner M. Redstone, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

The G & M Motors, Inc., owned and operated taxicabs in the District of Columbia. It rented a cab to one Davis, a hacker. While the cab was being used by a group upon a lump-sum payment to Davis for a trip into Virginia, an accident occurred near Charlottesville, in which one Howard Carter, a passenger, was killed. One Fleming, a licensed hacker, and a James Carter, not a licensed hacker, were the drivers of the car on the trip. The arrangement by Davis with Fleming, Carter, et al., was without permission of G & M Motors, Inc., and contrary to an agreement between him and it. Howard Carter's administrator sued in the Virginia circuit court. That court found as facts that Fleming and James Carter were acting as agents of Davis and that they were guilty of negligence. It found that no agency relationship was proven to exist between Davis and any of the corporate defendants, among which was G & M Motors, Inc. It rendered judgment for $7,500 against Davis, Fleming, and James Carter. The judgment having become final but not satisfied, the administrator brought suit in the District Court here against the appellee Insurance Company upon the basis of a local statute and a policy under which appellee Company allegedly issued insurance in respect to this cab. The District Court gave judgment for the Company. This appeal followed.

The statute provides in pertinent part as follows:

"The Public Utilities Commission of the District of Columbia is hereby directed to require any and all corporations, companies, associations, joint-stock companies or associations, partnerships, and persons, their lessees, trustees, or receivers, appointed by any court whatsoever, operating, controlling, managing, or renting any passenger motor vehicles for hire in the District of Columbia * * * to file with the Commission for each motor vehicle to be operated a bond or bonds, policy or policies, of liability insurance or certificate of insurance in lieu thereof in a solvent and responsible surety or insurance company authorized to do business in the District of Columbia, conditioned for the payment to any person of any judgment recovered against such corporations, companies, associations, joint-stock companies or associations, partnerships, and persons, their lessees, trustees, or receivers, appointed by any court whatsoever, or renters of their cabs, for death or for injury to any person or injury to any property, or both, caused in the operation, maintenance, use, or by reason of the defective construction of such motor cabs or other vehicles. Any such bond or undertaking or policy of liability insurance shall be in such form and on such terms or conditions as the Commission may direct: * * *. The Superintendent of Insurance shall be empowered to make reasonable rules and regulations

governing the writing of such insurance and the making of such bonds and the business of insuring or bonding such risks, including the expenses of management, administration, and acquisition of business and the rates to be charged. * * * It shall be unlawful to operate any vehicle subject to the provisions of this paragraph unless such vehicle shall be covered by an approved bond or policy of liability insurance as provided herein. The Public Utilities Commission shall have the power to make all reasonable rules and regulations which, in its opinion, are necessary to make effective the purposes of this section." [1]

Important to the present problem are the following provisions from the foregoing statute: (1) that every person operating, managing or renting taxicabs in the District of Columbia must file under the statute with the Public Utilities Commission; (2) that he may file either a bond, an insurance policy, or a certificate of insurance; (3) that the condition of the bond, policy or certificate is for the payment of any judgment recovered against such person or renters of his cabs for death or injury to any person caused in the operation or use of the cab; (4) that the undertaking shall be on such terms and conditions as the Commission may direct; (5) that the Superintendent of Insurance is empowered to make rules and regulations governing the writing of such insurance; and (6) that it is unlawful to operate a taxicab in the District of Columbia unless the cab is covered by an approved bond or policy as provided in the statute.

G & M Motors, Inc., did not file with the Commission a bond or a policy. Instead it filed, as the statute permitted and the Commission required, a certificate of insurance. That certificate was in the form of a card. It was addressed to the Commission, described the cab, stated that G & M Motors, Inc., was insured under a policy, No. 5452, in the form approved by the Superintendent of Insurance, referred to an endorsement printed on the reverse side, and was signed by the Insurance Company. The pertinent paragraph of the endorsement read as follows:

"Any and all conditions and/or provisions in said policy to the contrary notwithstanding, the liability of the company within the limits of liability stated in said policy shall, in contemplation of and in compliance with the provisions of Public 775—75th Congress, Chapter 809—3d Session, approved June 29, 1938, and/or Acts amendatory thereof, become and be absolute for damages adjudged against the insured on account of injuries to or death of persons or damage to or destruction of property resulting from said insured's ownership, maintenance or use of the motor vehicle or vehicles herein described, regardless of whether such motor vehicle or vehicles be owned wholly or in part by the insured."

The Insurance Company contends that its liability is determined by the terms of the policy, No. 5452. It says that the policy covered only liability for damages occurring while the cab was being used (a) with the permission of the "named insured" (which it says is G & M Motors, Inc., alone) and (b) within the District of Columbia. It says that the policy was approved by the Commission and the statute required no greater coverage. It says that, even if the policy did not conform to the statute, the mandate of Congress was addressed to the Commission and the court cannot rewrite a policy approved by the Commission. It says that the policy covered only accidents within the District of Columbia and that a local statute could not govern liability outside the District.

A copy of Policy No. 5452 is in the record as an exhibit. It does indicate that for its purposes "named insured" means just what it says and in this case means G & M Motors, Inc. It does pro-

---

1. 52 Stat. 1233 (1938), 56 Stat. 1051 (1942), D.C.Code § 44–301 (1951).

vide further that for liability to attach the actual use of the cab in question must be with the permission of the "named insured". It does also provide that it applies only to accidents while the cab is within the District of Columbia. It is clear that those provisions of the policy are in flat disagreement with the statute. The statute is about as clear and as broad as language could make it, in so far as the operation of the automobile as a cab is concerned. It provides that the policy must be for payment to "any person" of "any judgment" for death to "any person" arising from the operation of the cab. Moreover it specifically requires that the policy must cover not only the operators and managers but also "renters of their cabs".

Davis was a renter of this G & M Motors, Inc., cab. A final judgment has been secured against him on account of a death caused by the use of this cab while it was on hire by Davis. That much is beyond dispute. We are not here concerned with the problem of liability for the accident. A judgment of a court of competent jurisdiction on that matter has become final. We are concerned only with an action brought to satisfy that judgment. The key fact here is that the appellant administrator has a final judgment against Davis, the renter of the cab, on account of damages arising from operation of the cab.

The problem is whether under the circumstances the Insurance Company can be heard to plead the limited scope of its policy. The answer depends upon the Company's actions in respect to its customer (G & M Motors, Inc.), the Commission, and the public. It signed the "certificate of insurance" which we have described. That certificate was, as we have said, addressed to the Public Utilities Commission, which is the official body having in charge the regulation of public taxicabs on the streets of this District. It was filed for the purpose of securing for the owner of the automobile a license to operate the car as a cab. It referred specifically, in the printed endorsement, to the statute requiring lia-

bility insurance on the part of taxicabs. It mentioned that statute by name and by date. So there can be no doubt upon two scores. The Insurance Company knew that the purpose of the certificate was to satisfy the regulatory authorities, and it knew the provisions of the statute.

The Insurance Company is bound by the endorsement which it signed and filed. The paragraph above quoted from the endorsement begins "Any and all conditions and/or provisions in said policy to the contrary notwithstanding". It thus appears at that point that a commitment apart from the policy is about to be made. The policy itself seems put to one side at this point and for this purpose. The sentence continues: " * * * the liability of the company within the limits of liability stated in said policy * * *." That the phrase "limits of liability" refers to the amounts of liability and not to terms or conditions is made clear by the policy itself, which contains two paragraphs (Nos. 8 and 9) entitled "Limits of liability". The sentence then continues: " * * * shall, in contemplation of and in compliance with the provisions of" the statute "become and be absolute for damages adjudged against the insured * * *." Under the statute the "insured" must be the renter as well as the owner. The endorsement did not say that the policy does not cover renters of the cabs from the owner who is the "named insured". The endorsement did not mention a required actual permission of the G & M Motors, Inc., or of a geographical limit to the District of Columbia.

In sum, then, the endorsement recited that, any condition in the policy to the contrary notwithstanding, the liability of the Insurance Company would, in compliance with the statute, be absolute for damages adjudged against the insured on account of use of the cab. The Insurance Company says that "insured" means what the term is defined to mean in the policy, not what it is required to mean by the statute. The argument does appellee little good. The statute includes as the insured not only the owner but the

renter of its cab. And the policy defines "insured" to include not only the named insured but also any person using the automobile or legally responsible for its use. To be sure, a proviso is added to the policy definition, the proviso being that the actual use is with the permission of the named insured. But that proviso is clearly a condition or provision in the policy, and the endorsement signed and filed by the Insurance Company provides that, any condition or provision in the policy to the contrary notwithstanding, the liability of the Company is absolute for damages adjudged against the insured. We think the Commission meant the endorsement to make the coverage as broad as the statute required. We also think the Insurance Company intended the Commission to believe that the coverage was as broad as the statute; otherwise the policy would have been valueless to the operator in so far as securing official permission to operate the cab was concerned.

We have indicated that the provisions of the statute dealing directly with the filing of a bond, policy or certificate for each motor vehicle to be operated required the broadest coverage for the operation of the cab. Later provisions in the statute support that meaning. They deal with an alternate method of compliance, the filing of blanket bonds or policies and the creation of sinking funds. Those later provisions do not relate directly to the matter now before us, but they shed light on the meaning of the statute. The section provides that if an owner elects one of these alternate methods of compliance "such owner shall first file with the Public Utilities Commission an admission of liability, in conformity with the principle of respondent [*sic*] superior for the tortious acts of the

driver or drivers of such vehicle or vehicles aforesaid as shall be driven with the trade name or identifying design of such owner."[2] We think Congress could not have intended to require less protection against damage when the owner elected to file ordinary bonds or policies than was required when he elected to file a blanket bond or create a sinking fund. Congress could not have intended that *the cab owner could elect whether to furnish much or little protection.* It must have had in mind the same coverage in all cases.

Although we think the point immaterial we note, in view of appellee's insistence, that it is by no means clear that Policy No. 5452 was ever seen or approved by the Commission or the Superintendent. The clerk to the Commission was explicit in her testimony that the Commission had no concern with policies but required in lieu thereof the certificate signed by the Insurance Company. The Superintendent testified that he issued certificates of authority to companies but was not concerned with risk coverage. As we pointed out in the Bennett case, infra, the statute requires the Commission to prescribe the terms and conditions of this insurance. It did so when it prescribed the certificate which recited that pursuant to the statute, conditions in a policy to the contrary notwithstanding, liability was absolute for damages adjudged against the insured.

 There is ample authority for a decision that, where a carrier secures a license to do business upon the basis of an insurance policy purportedly in fulfillment of a statutory requirement, the statute governs the liability and any terms of the policy at variance with the statute are void.[3] But we need not go so

2. Supra note 1.

3. Utilities Ins. Co. v. Smith, 10 Cir., 1942, 129 F.2d 798; Liberty Mut. Ins. Co. v. McDonald, 6 Cir., 1938, 97 F.2d 497; Savery v. Kist, 1943, 234 Iowa 98, 11 N.W. 2d 23; Utilities Ins. Co. v. Potter, 1940, 188 Okl. 145, 105 P.2d 259, 154 A.L.R. 512; Fidelity & Casualty Co. of New York v. Jacks, 1936, 231 Ala. 394, 165 So. 242; Dunn v. Jones, 1936, 143 Kan. 218, 53 P.2d 918; Ott v. American Fidelity & Casualty Co., 1931, 161 S.C. 314, 159 S.E. 635, 76 A.L.R. 4; Curtis v. Michaelson, 1928, 206 Iowa 111, 219 N. W. 49; Enders v. Longmire, 1937, 179 Okl. 633, 67 P.2d 12; Devlin v. New York Mutual Casualty T. Ins. Co., 1925, 213 App.Div. 152, 210 N.Y.S. 57; Engelson

far in the present case. We hold two things. First, we hold that, by its signature on the certificate of insurance filed with the Commission and embodying the endorsement we have described, this Company assumed the full liability required by the statute in respect to this cab. Second, we hold that, where an insurance company aids a taxicab owner to secure a license to operate on the streets of Washington under a statute which requires insurance coverage upon specified conditions, and files with the Commission representations that it has issued a policy pursuant to that statute, it will not be heard to say when suit is brought against it that its policy was less effective than the statute required.

A measure of important public interest was effectuated by this statute. Common carriage by taxicabs had become one of the most ordinary features of daily urban life. Scores of operators of greatly varying responsibility sought licenses. Congress intended to protect the people who hailed those cabs. The legislative history of the statute shows that the insurance companies were deeply interested in the enactment.[4] Every possible consideration impels a strict requirement that the full measure of the clear terms of the act be met precisely.

■■■■ We find no merit in the contention which the Company bases upon the fact that the accident occurred outside the District of Columbia. Congress covered the subject when it provided that the insurance must cover *any* judgment for injury to *any* person arising from operation of the cab. Terms of limitation are conspicuously absent from the statute. So the only possible question is one of congressional power, and the answer to that question is patent. In the

first place, Congress has power to legislate in respect to interstate as well as to intra-District commerce. In the second place, the contention misconceives the statute. This act prescribes the conditions upon which a common carrier may operate on the streets of Washington. It provides, in effect, that before a cab owner can pick up passengers on those streets he must assure the public authorities that such passengers will be protected against damage so long as they are in that cab. That cab operates under District authority. Congress, as the legislature for the District, had ample authority to prescribe that a license to operate as a common carrier on District streets be premised upon an assurance of protection to passengers picked up under authority of that license.[5] This concept of the nature of such a statute, and the validity of the measure from that viewpoint, have been sustained repeatedly.[6] Our reasoning on the point parallels that employed by the Supreme Court in respect to workmen's compensation statutes.[7] The relationship between the cab and the passenger, the contract, is established within the District. A sentence in the Alaska Packers case[8] expresses the matter succinctly. "Obviously the power of a state to effect legal consequences is not limited to occurrences within the state if it has control over the status which gives rise to those consequences." The Supreme Court quoted the Supreme Court of California: "The contract creates a relationship under the sanction of the law and the same law attaches as an incident thereto an obligation to compensate for injuries sustained abroad amounting to a sort of compulsory insurance." It is, of course, common knowledge that a considerable proportion of the taxicab business initiated at points

v. Commerce Casualty Co., 1933, 149 Misc. 886, 269 N.Y.S. 453.

4. 83 Cong.Rec. 6495–6496 (1938).

5. Utilities Ins. Co. v. Potter, 1940, 188 Okl. 145, 105 P.2d 259, 154 A.L.R. 512.

6. Packard v. Banton, 1924, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596; Hodge Drive-it-Yourself Co. v. City of Cincinnati, 1932,

284 U.S. 335, 52 S.Ct. 144, 76 L.Ed. 323; Reitz v. Mealey, 1941, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21.

7. Alaska Packers Ass'n v. Industrial Acc. Comm., 1935, 294 U.S. 532, 541, 55 S. Ct. 518, 79 L.Ed. 1044; Bradford Elec. Co. v. Clapper, 1932, 286 U.S. 145, 157, 52 S.Ct. 571, 76 L.Ed. 1026.

8. Supra note 7.

inside the few square miles of the District terminates outside—trips to the immediately surrounding suburbs, to the National Airport, and to nearby historic sites such as the Amphitheater, and so on. Congress has power to require protection of those people, relying as they must upon District regulatory measures.

Statutes which require private motorists to carry liability insurance, or to obtain it, such as our local statute,[9] require such insurance to be against liability arising either within or without the licensing jurisdiction. The Uniform Motor-Vehicle Safety Responsibility Act,[10] sponsored by the Public Roads Administration among others, contains such provisions (Sec. 21(b) 2), and all the forty-eight states appear to have provisions of like effect. There is a dearth of judicial opinion upon the precise point,[11] but we have found none which hold the extraterritorial coverage invalid. If a state cannot require that a private citizen be thus insured as a condition to the use of the streets by his motor vehicle, all those statutes are invalid. If it can do so in respect to its private citizens, *a fortiori* it has power to require operators of common carriers on its streets to carry such insurance.

Certainly the universally accepted idea in respect to the regulation of insurance is that the authorities in a given jurisdiction regulate the insurance written in that jurisdiction, not merely or directly the insurance covering accidents there.[12] The regulation by District authorities of accident insurance policies written in the District is not deemed an extraterritorial action.

In the Bennett case[13] the driver of the cab was on a pleasure trip, and the injured person was his personal guest, not a passenger for hire. We held that the insurance did not apply. This statute did not provide an all-inclusive liability insurance for the vehicle as such or the driver as such; it was a provision imposed upon the operation of taxicabs as common carriers.[14]

It is true that Davis agreed with G & M Motors, Inc., that he would not take the cab out of "the metropolitan area of Washington". But that was a matter between him and the company. No such agreement could limit the requirements imposed by the statute for the operation of the cab as a common carrier. Moreover no definition of the "metropolitan area of Washington" appears. Presumably it means to include an undefined area in suburban Maryland and Virginia as well as the District of Columbia. But that concept does not fit any legal theory advanced here as the meaning of the statute. The utmost claimed is that the statute applies to the geographical District of Columbia.

■ There is no merit in the Company's contention that the terms and conditions of cab insurance are limited to those adopted by the Commission, even if short of or contrary to the terms of the statute. The statute gives the Commission authority to prescribe terms and conditions, but that provision confers no power to nullify a condition prescribed by the statute itself. It means terms and conditions consistent with the statute, not in contradiction to it.[15] It is a fa-

9. 49 Stat. 166 (1935), D.C.Code § 40–401 et seq. (1951).

10. Uniform Motor Vehicle Act 4—1944 (G.P.O. 1945).

11. Nulter v. State Road Commission of West Virginia, 1937, 119 W.Va. 312, 193 S.E. 549, 553, 194 S.E. 270; Goodwin v. Superior Court of Yavapai County, 1948, 68 Ariz. 108, 201 P.2d 124.

12. See in this connection Hutchins Mut. Ins. Co. v. Hazen, 1939, 70 App.D.C. 174, 105 F.2d 53.

13. Bennett v. Amalgamated Cas. Ins. Co., 1952, 91 U.S.App.D.C. 279, 200 F.2d 129.

14. See also Foster v. Commercial Standard Ins. Co., 10 Cir., 1941, 121 F.2d 117.

15. Savery v. Kist, 1943, 234 Iowa 98, 11 N.W.2d 23; Fidelity & Casualty Co. of New York v. Jacks, 1936, 231 Ala. 394, 165 So. 242; Dunn v. Jones, 1936, 143 Kan. 218, 53 P.2d 918; Ott v. American Fidelity & Casualty Co., 1931, 161 S.C. 314, 159 S.E. 635, 76 A.L.R. 4; Curtis

miliar rule that rules and regulations pursuant to statutory law and consistent with its provisions are valid as law but that those inconsistent with a statute are null.

 In its brief the Company says that it never actually signed the endorsement which was printed on the reverse of the signed certificate filed with the Commission. It argues that for that reason it never made the admission incorporated in the endorsement. But over its signature on the certificate the Company told the Commission: "There is attached to the policy copy of endorsement printed on the reverse side of this certificate. The policy and endorsement will remain in full force and effect until canceled as provided in the said endorsement." So the contention that it never in fact executed the endorsement is not now available to the Company.

The judgment of the District Court is reversed and the case remanded with instructions to enter judgment for the plaintiff, within the limitations on amount in the policy.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge (dissenting).

As I understand their opinion, my brothers of the majority reason thus: (a) a final judgment has been rendered against Davis growing out of James L. Carter's negligent operation of the cab; (b) Davis, having rented the cab from the owner, admittedly was insured under the owner's policy; (c) therefore the insurance company is liable to the judgment creditor. Thus they hold the Virginia judgment against Davis to be conclusive of the insurance company's liability. If this conclusion were correct, it would be enough and the majority need go no further. But, apparently realizing that an insurer's liability is not necessarily coincident with that of its insured, they go on to hold that § 44–301, D.C. Code (1940), requires a cab to be insured

as such, regardless of who is driving it; that therefore the policy, purporting to conform to the statute, covered any person who may have been operating the cab; and that the coverage could not be restricted by the policy to the named insured and persons using the cab with its permission.

I disagree as to both propositions. My view is that the Virginia judgment against Davis is not conclusive of Amalgamated's liability, and that the policy, construed in the light of the statute, covered G & M Motors, Inc., and Louis Davis, but did not extend to James L. Carter who was using the cab without their knowledge or consent.

That the judgment did not fix liability upon Amalgamated merely because Davis was an insured person is settled, I think, by State Farm Mutual Automobile Insurance Company v. Coughran, 1938, 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970. In that case, after judgment against the car owner for damages caused by the negligent driving of the car, the injured party sued the owner's insurance company on the judgment. The insurance company was permitted to show that the risk was not within the policy because the car was not being driven at the time by the insured or by his paid driver or a member of his family or a person acting under his authority, within the fair intendment of the policy. See also Farm Bureau Mutual Automobile Insurance Company v. Hammer, 4 Cir., 1949, 177 F.2d 793, 799–800, where the court said:

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which

v. Michaelson, 1928, 206 Iowa 111, 219 N.W. 49; Engelson v. Commerce Casual-

ty Co., 1933, 149 Misc. 886, 269 N.Y.S. 453.

it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance."

Whether the judgment against Davis is conclusive as to the insurance company's liability depends, therefore, upon whether the policy covered the cab while it was being operated by James L. Carter without the knowledge or permission of either G & M Motors, the owner, or Davis, the renter of the cab, and at a point more than one hundred miles distant from the District of Columbia. As to that question Amalgamated is not bound by the Virginia court's findings, as the Fourth Circuit said in the Hammer case.

In order to ascertain whether James L. Carter, was insured, I shall briefly review the policy, the applicable statute, and the meager facts concerning the accident which the record contains. Amalgamated insured G & M Motors, the owner of Century Cab No. 5, against damages "caused by accident and arising out of the ownership, maintenance or use of the automobile." The policy also defined the term "insured" as including "any person while using the automobile * * * provided * * * that the actual use is with the permission of the named insured."

The statute requires persons operating or renting cabs to provide either a bond or insurance conditioned for the payment of any judgment recovered against the owner *"or renters of their cabs,* for death * * * caused in the operation, maintenance, [or] use * * * of such motor cabs * * *."* (My emphasis.) In compliance with this statute the insurance company agreed by endorsement that its liability should

"* * * become and be absolute for damages adjudged against the insured on account of injuries to or death of persons or damage to or destruction of property resulting

from *said insured's ownership, maintenance or use* of the motor vehicle * * *." (My emphasis.)

It is not suggested that this endorsement, which provides for absolute liability for damages resulting from *the insured's* use of the cab, does not meet the requirements of the statute. Such a suggestion would be untenable, for one who rents a cab from its owner of course has his permission to use it;[1] so, in covering any person who used Century Cab No. 5 with G & M Motors' permission, the policy extended to Louis Davis and was therefore as broad as the statute which requires owners and their renters to be insured.

The question is, whose use of the cab does the statute require to be covered by insurance, and whose use of it was covered by the policy? I think it plain that the statute requires use by the owner or his renter to be covered, and that the policy here is slightly broader in that it covers not only use by the owner and his renter but also use by any other person authorized by the owner. Quite contrary to this, the majority say, "It [the statute] provides that the policy must be for payment to 'any person' of 'any judgment' for death to 'any person' arising from the operation of the cab." The quoted sentence goes too far, in my opinion, because it construes the statute as requiring insurance of the cab as such, without reference to whether it was being used by an insured person. The statute requires, and the policy provided, that the insurance company would pay "any judgment" for death to "any person" arising from the operation of the cab by G & M Motors or by anyone using the cab with its permission, including Davis.

The Act does provide, to be sure, that not only the owners but the "renters of their cabs" shall be insured against damages caused in the operation or use thereof. But I suggest that the operation or

1. I put aside for the moment the question of the validity of the policy provision restricting use to the District of Columbia. For purposes of the present discussion, I assume, without conceding, that the policy covered one insured thereunder, no matter where he might take the cab.

use must be that of the owner or the renter of the cab, and that liability cannot attach when damages result from the operation or use by some person unknown to and unauthorized by the owner, for such a person is not a "renter" within the meaning of the statute. It must be that a "renter" is one who rents from the insured owner; the word does not include one who rents from the original renter without the knowledge or consent of the insured owner. We so held, in effect, when we said, in Simon v. City Cab Company, 1935, 64 App.D.C. 364, 365–366, 78 F.2d 506, 507, certiorari denied 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455:

> "It is difficult to conceive of a case, where the owner of an automobile, used privately, for business purposes, or publicly as a taxicab, could be held liable for an accident caused by the car while operated by a person unknown to the owner and without his express or implied permission. Clear it is, that the agent of the owner, in whatever capacity he is charged with the use or operation of the car, cannot without the knowledge or consent of the owner transmit his agency to a person unknown to the owner, and thereby impose liability on the owner for the reckless or negligent operation of the car."

While the Simon case was decided before the enactment of § 44–301, D.C.Code (1940), there is nothing in that statute which is contrary to, or which detracts from, the principle stated in the language just quoted. Here, James L. Carter was neither the original renter from G & M Motors, nor was he a renter from Davis. He had not been authorized by either to operate the cab.

I turn now to the record to ascertain, if possible, the circumstances in which the accident occurred. No evidence was introduced on that subject. The only witnesses were the District of Columbia Commissioner of Insurance and the chief clerk of the Public Utilities Commission, who knew nothing of the accident and of course did not undertake to testify concerning it. There was no stipulation of facts except, as shown by the pretrial order, that the scene of the accident was approximately fifteen miles north of Charlottesville, Virginia.

All else we know of the facts comes from statements made to the court by the attorney for the insurance company. Counsel for the administrator would not stipulate to his adversary's narrative. When the trial judge made the following suggestion to him:

> "* * * You can agree those are the facts, and then the only thing I will have to determine, outside of the representative [*sic*] of the Public Utilities Commission, is whether or not the doctrine of res judicata applies * * *,"

appellant's counsel responded thus:

> "* * * We will accept as fact only the findings of fact of that Court which had all the argument [*sic*. Evidence?] before it."

He did agree, in accordance with the court's later suggestion, that "for the sake of discussion" he would assume the facts to be as stated by appellee's attorney and would "let the doctrine of res judicata apply."

Apparently the trial judge treated this as a stipulation, and based his findings of fact upon the narrative of the counsel for the insurance company. For that reason, I summarize the facts stated by counsel:

The taxicab, owned by G & M Motors, Inc., was rented by it to Louis P. Davis pursuant to a written application which contained the following agreement on his part:

> "I further agree not to allow any person other than myself to drive the aforementioned automobile without written permission from the G. & M. Motors, Inc., or their duly appointed agents. This auto may not be taken out of the metropolitan area of Washington, D. C., without written permission of G. & M. Motors, Inc., or their agents."

On May 3, 1947, without permission from G & M Motors, Davis rented the

224

cab for a flat price of twenty or thirty dollars, to John Fleming[2] for the purpose of taking a trip down into Virginia.[3] Fleming then "made arrangements" with Howard Carter and his brother, James L. Carter, to take the cab to a place near Charlottesville, Virginia. As they set out, Fleming was driving and the Carter brothers and two girls were in the cab. In the vicinity of Fredericksburg, Virginia, James L. Carter, who did not have a D. C. hacker's license, relieved Fleming at the wheel and was driving the cab when the acciednt occurred in which his brother was killed.

Thereafter Howard Carter's administrator filed suit in the Circuit Court of Greene County, Virginia, against G & M Motors, Inc., Louis P. Davis, John Fleming and James L. Carter, as well as other persons and corporations. He was awarded judgment for $7,500 against Davis, Fleming and Carter. The action was dismissed by the court as to G & M Motors on the ground that Davis was not its agent.[4]

The Virginia judgment contains the following, denominated "findings of fact":[5]

"1. That James Landers Carter and John Fleming were guilty of negligence.

"2. That the defendants John Fleming and James Landers Carter were acting as the agents of Louis Davis.

"3. That no agency relationship was proven to exist between Louis Davis and any of the defendant companies."

Having so found, the court proceeded to give the administrator judgment against Davis, Fleming and Carter. These findings do not bind Amalgamated unless, as I have said, its policy covered James L. Carter at the time of the accident. As to that question, which was not before the Virginia court and about which it did not undertake to adjudicate, Amalgamated was entitled to its day in court under the Supreme Court's decision in the Coughran case.

The question simply is, was James L. Carter an "insured" under the policy and the statute? To be sure, G & M Motors and Davis were insured but, under the Simon case, Davis could not extend coverage to John Fleming without the knowledge and consent of G & M Motors, and certainly Fleming could not extend it to James L. Carter.

The majority opinion says,

" * * * The key fact here is that the appellant administrator has a final judgment against Davis, the renter of the cab, on account of damages arising from operation of the cab."

But, as I have suggested, the damages did not arise from Davis' operation of the cab, and Amalgamated had insured only against damages so arising. As I have heretofore indicated, I think the majority are mistaken in holding that Amalgamated had insured the cab as

2. The majority opinion refers to Fleming as a "hacker," no doubt because the trial court's findings of fact described him as "a licensed hacker." I find nothing in the record to support the finding.

3. My brothers are mistaken in referring to this as a group arrangement. They speak of "The arrangement by Davis with Fleming, Carter, et al." Davis dealt only with Fleming. It does not appear that he dealt with or even knew the Carters.

4. The Virginia court had before it the written application under which Davis rented the cab from G & M Motors. This appears from the copy in our record which is certified by the clerk of that court as a copy of an exhibit in that proceeding.

5. These findings do not bind Amalgamated, but it is interesting to speculate as to how Fleming could have been negligent when James L. Carter was driving. Perhaps the court thought he was negligent in yielding the wheel to Carter. It is also interesting to note that the Virginia court held the rental agreement between G & M Motors and Davis did not create an agency, but nevertheless held that the rental agreement between Davis and Fleming made both Fleming and Carter agents of Davis.

such, regardless of who was driving.[6] Such ruling may well make taxicab liability insurance difficult, if not impossible, to obtain, or prohibitive in cost, since the insurance company will now be liable in a case where a cab has been stolen and an accident occurs while it is being negligently operated by the thief. "Under no circumstances in such a case," we said in the Simon opinion, "could the owner of the car be held liable."

The administrator alleged in his complaint that the policy contained the following provision:

"It is understood and agreed that anything in this policy to the contrary, notwithstanding the coverage afforded under this policy, * * * is afforded without regard to the boundaries of the District of Columbia. This endorsement is effective on or about 12:01 a. m., May 26, 1946."

As a matter of fact the policy contained no such provision. An endorsement to that effect was submitted to the Superintendent of Insurance by Amalgamated on April 29, 1946, but was later withdrawn and never became effective as an endorsement to the master policies issued by Amalgamated. Colloquies between court and counsel show that the proposed endorsement is the same as that which we had before us in Bennett v. Amalgamated Casualty Insurance Company, 1952, 91 U.S.App.D.C. 279, 200 F.2d 129. There we held the provision, alleged by the present appellant to have been a part of the contract of insurance, never became effective. Consequently the policy provision restricting use of the cab to the District of Columbia remained in effect. In the Bennett case where the contractual definition of the word "insured" was the same as that involved here, we held the negligent driver of the cab, who had rented it directly from the owner, was not an "insured" at the time of the accident, which occurred in North Carolina, because he did not have the permission of the named insured to use it as he did.

The present case is much stronger for the insurance company in that the negligent operator of the cab was neither the owner nor the renter. He was not even a renter from a renter. He did not have the permission of the owner or the original renter to operate the cab even in the District of Columbia, and certainly not at a point in Virginia more than one hundred miles distant from the District. Moreover, the record does not show that the decedent was a paying passenger.

I would affirm the judgment of the District Court on the authority of the Bennett case.

6. The majority opinion, in attempting to distinguish Bennett v. Amalgamated Casualty Insurance Co., expressly disclaims making this holding. It says:
"* * * This statute did not provide an all-inclusive liability insurance for the vehicle as such or the driver as such; it was a provision imposed upon the operation of taxicabs as common carriers."
But the majority opinion also contains the following:
"* * * And the policy defines 'insured' to include not only the named insured but also any person using the automobile or legally responsible for its use. To be sure, a proviso is added to the policy definition, the proviso being that the actual use is with the permission of the named insured. But that proviso is clearly a condition or provision in the policy, and the endorsement signed and filed by the Insurance Company provides that, any condition or provision in the policy to the contrary notwithstanding, the liability of the Company is absolute for damages adjudged against the insured."
This seems to me to be a flat holding that the policy covered any person using the automobile, whether or not he had permission from G & M Motors. It is therefore a holding that the policy insured the cab as such, regardless of whether the driver was an "insured" within the meaning of the contract or the statute.